Argued June 22, affirmed August 16, reconsideration denied September 22, petition for review denied October 12, 1976

In the Matter of K., a Minor Child
## STATE ex rel JUVENILE DEPARTMENT OF MULTNOMAH COUNTY, *Respondent,*
*v.*
## K., *Appellant.*
(No. 28, 147-BO, CA 5556)

554 P2d 180

*Martin R. Cohen,* Certified Law Student, Portland, and *Bernard F. Vail,* Portland, argued the cause for appellant. With them on the briefs was Patricia Watson, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Lawrence Gorin, Deputy District Attorney, Portland.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

## LANGTRY, J.

These are two appeals from findings and judgments of the Juvenile Court of Multnomah County, one in November 1975, the other in January 1976.

Based upon a showing that his behavior was "such as to endanger his own welfare or the welfare of others," K. was initially found to be within the jurisdiction of the Juvenile Department of the Multnomah County Circuit Court on November 10, 1975. At that time K. was 11 years old; he became 12 on December 19, 1975. A judgment made K. a ward of the court and temporarily committed him to the custody of the Children's Services Division (CSD) for care, placement and supervision.[1] K. appealed from that judgment, but was returned to his mother's home under CSD supervision. The notice of appeal in that case was dated and filed December 8, 1975.

A petition subsequently filed with the court on January 5, 1976 alleged that since the entry of the November order K. had committed an act which was a

---

[1] ORS 419.476(1) provides that the juvenile court has

"* * * exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a) Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city; or

"* * * * *

"(c) Whose behavior, condition or circumstances are such as to endanger his own welfare or the welfare of others; or

"* * * * * *"

Pursuant to ORS 419.482 any individual may file a petition alleging that a named minor is within the jurisdiction of the court; upon receipt of that petition the court is required to make a preliminary inquiry which may lead to the issuance of a summons and a hearing on the matter. *See* ORS 419.484 through 419.500.

ORS 419.507 authorizes the court to make a child found to be within its jurisdiction its ward and to place the child in the legal custody of CSD. Under that same statute CSD may then elect to place the minor in a "child care center," although it is required to take any recommendation made by the committing court into consideration before making any such placement. In this case CSD apparently followed the court's suggestion and placed K. in his mother's home.

[ 453 ]

violation "of the law, or which if done by an adult would constitute [a violation] of the law, of the State of Oregon * * *"[2] in that he had "knowingly and unlawfully enter[ed] and remain[ed] in a * * * dwelling * * * with the intent to commit a crime therein." Following a hearing on this petition the court concluded that the "charge" had been established beyond a reasonable doubt and on January 20, 1976 proceeded to enter an order continuing K.'s wardship and temporarily committing him to CSD for placement at Mac-Laren School for Boys, a training school for minors requiring secure custody. That commitment was suspended, however, with K. being placed on "formal probation" in the custody of CSD which was itself ordered to submit a "treatment plan" to the court within 14 days.[3] He appealed from the latter judgment, rendered by a different judge than the first.

K. seeks reversal of the "jurisdictional finding" of November 10, 1975 based on "welfare" (ORS 419.476(1)(c)) and the denial of his motion to dismiss the subsequent petition charging him with a violation of law (ORS 419.476(1)(a)), contending that he has in several respects been deprived of the "due process" to which he was entitled. Specifically, the rights which he claims were violated were failure to require proof beyond a reasonable doubt at the November hearing, failure to enforce the right against self-incrimination at the same hearing, failure to suppress a confession used there and failure to have corroborative testimony at the same hearing; failure to dismiss for lack of speedy trial at the January hearing and failure to dismiss at the January hearing because the right against

---

[2] ORS 419.476(1)(a), see note 1.

[3]

"Whenever a child who is in need of medical care or other special treatment by reason of his physical or mental condition is placed in the custody of the Children's Services Division by the juvenile court, the division shall prepare a plan for care or treatment within 14 days after assuming custody of the child. The court may indicate in general terms the type of care which it regards as initially appropriate * * *." ORS 419.507(2)(e).

[ 454 ]

self-incrimination was violated and he had no notice that he could be charged with a law violation petition.

The United States Supreme Court held in *In Re Gault,* 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967), that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone," and that various of the federal constitutional guarantees accompanying criminal proceedings—including notice of charges, the right to counsel, the opportunity to confront and cross-examine, and the privilege against self-incrimination—are applicable to state juvenile proceedings if the consequence is that the juvenile may be committed to a state institution.[4] *In Re Winship,* 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970), presented "the single, narrow question whether proof beyond a reasonable doubt is among the 'essentials of due process and fair treatment' required during the adjudicatory stage [of a juvenile proceeding] when a juvenile is charged with an act which would constitute a crime if committed by an adult." 397 US at 359. The court specifically held that a child could not be subjected "to the stigma of a finding that he violated a criminal law *and* to the possibility of institutional confinement on proof insufficient to convict him were he an adult." (Footnote omitted; emphasis supplied.) 397 US at 367. In a more recent opinion the court held that "a [juvenile] proceeding whose object is to determine whether [a minor] has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years * * *" placed that juvenile "in jeopardy" and precluded retrial as an adult for the same offense. *Breed v. Jones,* 421 US 519, 529, 95 S Ct 1779, 44 L Ed 2d 346 (1975).[5]

---

[4]In considering the applicability of the privilege against self-incrimination specifically, the court "emphasized" that it was "concerned only with a proceeding to determine whether a minor is a 'delinquent' *and* which may result in commitment to a state institution * * *." (Emphasis supplied.) *In Re Gault,* 387 US 1, 44, 87 S Ct 1428, 18 L Ed 2d 527 (1967).

[5]Prior to the Supreme Court's decision in *Breed v. Jones,* 421 US 519, 95

■ Thus, the various constitutional "rights" to which a criminal defendant is entitled—including the privilege against self-incrimination, and the assurance that the state will be required to establish guilt "beyond a reasonable doubt"—must also be accorded a juvenile in the adjudicatory stage of a juvenile proceeding which may result in his or her placement in an "institution of confinement."[6] Conversely, however, the cases we have reviewed also suggest that where the child "charged" is *not* as a consequence subjected to the possibility of what amounts to incarceration, the requirements of due process and fair treatment applicable to the proceedings based upon that charge may not include the entire spectrum of rights granted by *Gault* and its progeny.

Under the terms of ORS 420.011 no child younger than 12 years of age "may be admitted to, received by or cared for in a juvenile training school * * *." Further, an amendment to ORS 419.509(1), which became effective on September 13, 1975, requires that a juvenile can be placed in a training school requiring secure custody only if he is found in the juvenile court's jurisdiction by reason of a law violation under ORS 419.476(1)(a) (*see* note 1). Such a finding must be based on proof beyond a reasonable doubt. ORS 419.500(1). The November judgment was based on a

---

S Ct 1779, 44 L Ed 2d 346 (1975), this court had held in *State ex rel Juv. Dept. v. Knox,* 20 Or App 455, 532 P2d 245 (1975), that "the constitutional prohibitions against double jeopardy bar an appeal by the state from the dismissal by the juvenile court of a petition in a juvenile proceeding in which the juvenile is charged with an act which would be a crime if committed by an adult due to a failure of proof," specifically noting that "any procedure constitutionally required in criminal proceedings which is one of the 'essentials of due process and fair treatment,' will be required in juvenile proceedings, where loss of liberty is at stake, particularly if that procedure will not impair the benefits which the states seek to promote by the establishment of separate juvenile court systems * * *." 20 Or App at 458-62.

[6] *See In Interest of E.P.,* 291 So 2d 238 (Fla App 1974); *In Interest of Potter,* —— Iowa ——, 237 NW2d 461 (1976); *Matter of Spalding,* 273 Md 690, 332 A2d 246 (1975); *see also Bartley v. Kremens,* 402 F Supp 1039 (ED Pa 1975).

jurisdictional finding under allegations fitting ORS 419.476(1)(c) (*see* note 1) where proof is by a preponderance of evidence. ORS 419.500(1). "Juvenile training school" is defined in ORS 420.005 as "Hillcrest School of Oregon, the MacLaren School for Boys and any other school established by law for similar purposes, [including] the other camps and programs maintained under [ORS ch 420]."

■ At the time of the November hearing K. was under the age of 12 and the allegations were under ORS 419.476(1)(c). The dispositional alternatives available to the court at that time were, under ORS 419.509(1), limited to placing him on probation in the custody of his mother or transferring custody to some other relative, an individual maintaining an approved foster home or CSD for placement in a child care center. While any of these alternatives would theoretically have resulted in the imposition of some limitations upon K.'s personal "liberty," none would have produced a "deprivation" equivalent in kind or degree to that necessarily resulting from placement in MacLaren or any other "camp" or "program" maintained for the confinement and rehabilitation of youths requiring secure custody. Nor is there anything in the record to indicate that it would have placed him in an environment exercising more restraint on him than that of a normal home, under the circumstances.

Because the November hearing and resulting judgment did not place K. in jeopardy of being committed to an institution with a " '* * * regimented routine and institutional hours . . . .' [where] [i]nstead of mother and father and sisters and brothers and friends and classmates, his world [would be] peopled by guards, custodians, state employees, and 'delinquents' * * *'" (387 US at 27), his reliance upon *In Re Gault* and *In Re Winship*, both *supra*, in his appeal from that judgment as a measure of the "rights" to which he was entitled is misplaced. K. and his mother had been provided with notice of the "charge" made against him prior to the commencement of the jurisdictional proceeding; they

[ 457 ]

were given an opportunity to prepare a "defense," to respond and to cross-examine those making the charge; K. was represented by counsel throughout. The charge was under ORS 419.476(1)(c); therefore, as previously noted, the state was required to establish the court's jurisdiction by a preponderance of the evidence by the terms of ORS 419.500(1). In light of the limits placed upon the court's dispositional authority by virtue of K.'s age at the time of the initial jurisdictional hearing, we are satisfied that the procedures employed, and the rights accorded, adequately met all applicable requirements of "due process and fair treatment." In passing, however, we note that the evidence in the November hearing shows that during the episode leading to that hearing K. had his *Miranda* rights thoroughly explained to him by an arresting officer, under circumstances that lead to a reasonable belief he understood them.

Our further consideration is with respect to the subsequent "law violation" petition (ORS 419.476(1)(a)) of January 5, 1976 which resulted in the entry of a judgment, after K. was 12 years old, committing him to MacLaren, which is the subject of the second appeal. The "law violation" alleged occurred while he was yet 11, although the petition and hearing came after his 12th birthday.

K. contends that the court erred in failing to grant his motion to dismiss "for lack of a speedy trial." There was, in fact, a "delay" of some 15 days only between the filing of the "law violation" petition and the completion of a hearing on the matter, but K. contends that it should nonetheless have been dismissed because it was based upon a burglary incident involving him which occurred on November 24, 1975. This also had been initially the basis for yet another "welfare" petition, under ORS 419.476(1)(c), originally filed on November 25, 1975. Multnomah County Juvenile Court Rules provide that a petition alleging delinquency will be automatically dismissed 30 days after it is filed unless an "adjudicative" hearing has

been commenced. The November 25 petition was ultimately dismissed under that rule, and K. now contends that the petition of January 5 was filed in an attempt to improperly extend the period within which he could be "held to answer."

In *State v. Zauner,* 250 Or 96, 441 P2d 81 (1968), an original petition alleging delinquency had been dismissed because a summons had not been issued within 60 days as required by statute. There, the court held that the issuance of a second petition based upon the same incident violated no statutory or constitutional provision. Based upon *Zauner,* the court's denial of K.'s motion to dismiss the petition of January 5, 1976 was correct. The filing of the "law violation" petition was carried out in accordance with all statutory requirements as an original petition. There had been no "adjudication" on the initial "welfare" petition alleging the same misconduct; hence, jeopardy had not attached.

■ K. contends that the law violation petition adjudicated in the January hearing should have been dismissed because it was based on an act which occurred before he was 12 years old, and the first judge previously had told him he could not be prosecuted for his unlawful acts occurring prior to age 12. He does not in any of his extensive brief contend that it is the law that he could not have been prosecuted for such acts because he was not yet 12. The argument he makes is sophistry; it presupposes that a judge can give, through the operation of some vague estoppel theory, a privilege to a child under 12 to violate the law with impunity. We will not listen to such an argument.

■ He also contends that the filing of the latter petition "placed an impermissible burden upon the child's Fifth Amendment right against self-incrimination." The gist of his argument to support this contention is that the prosecutor, prior to the hearings, gave him his choice of admitting to a behavior petition (ORS 419.476(1)(c)) or having a law violation petition (ORS

419.476(1)(a)) filed, with a recommendation from the prosecutor for commitment. He says he chose the latter. There is little in the record to support what he says. Regardless, he simply does not point to anything in the record that indicates any self-incrimination evidence was used against him. The evidence was that on the occasion of his apprehension for burglary—while he was in the act of committing it—the officers explained his *Miranda* rights to him and he understood them. Then, in the January hearing only direct evidence of the burglary was offered—no admissions or confessions—and the court found that the charge had been proven beyond a reasonable doubt. K. was represented by counsel throughout. We cannot find anything in the record of the January hearing to show he was a witness against himself. Hence, there is no base for the contention concerning self-incrimination.

Both judgments are affirmed.