Argued January 16, appeal dismissed March 3, 1975

# IN THE MATTER OF KNOX, RONALD LAVERNE, ALSO KNOWN AS RONALD LAVERNE DOWNING, A MINOR CHILD.

## STATE EX REL JUVENILE DEPARTMENT OF MULTNOMAH COUNTY, *Appellant, v.* KNOX (No. 21,531-A), *Respondent.*

532 P2d 245

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Nancy Snow Kaza,* Family Law Center - Legal Aid Service, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Lee, Judges.

SCHWAB, C. J.

The issue in this case is whether the prohibition against double jeopardy contained in the United States and Oregon Constitutions[1] applies in juvenile proceedings. The question arose in the following way.

In a petition filed June 12, 1974, in juvenile

---

[1] Art I, § 12 of the Oregon Constitution states:

"No person shall be put in jeopardy twice for the same offence (sic), nor ·be compelled in any criminal prosecution to testify against himself."

The Fifth Amendment of the United States Constitution states in part:

"* * * [N]or shall any person be subject for the same offence [sic] to be twice put in jeopardy of life or limb * * *."

court, Knox was accused of attempted rape, in violation of ORS 163.375.[2] At the commencement of the hearing on the charge on July 2, 1974, the state moved to amend the petition to charge Knox with sexual abuse in the first degree in violation of ORS 163.425,[3] rather than attempted rape. This motion was objected to by defense counsel and denied by the judge, apparently on the grounds that (1) the state should have filed a petition charging the correct crime earlier since the evidence had not changed since the filing of the petition charging attempted rape, and (2) Knox was being held in custody and the amendment would require the granting of a continuance. The state did not dismiss and refile, but rather presented testimony by both the victim and a witness that Knox had forcibly subjected the victim to sexual contact. No evidence was presented to show that Knox attempted to have sexual intercourse with the victim. At the close of the state's case, counsel for the juvenile moved that the petition be dismissed for failure to prove attempted rape. The

---

[2]
"(1) A person who has sexual intercourse with a female commits the crime of rape in the first degree if:

"(a) The female is subjected to forcible compulsion by the male; or

"(b) The female is under 12 years of age; or

"(c) The female is under 16 years of age and is the male's sister, of the whole or half blood, his daughter or his wife's daughter.

"(2) Rape in the first degree is a Class A felony." ORS 163.375.

[3]
"(1) A person commits the crime of sexual abuse in the first degree when he subjects another person to sexual contact; and

"(a) The victim is less than 12 years of age; or

"(b) The victim is subjected to forcible compulsion by the actor.

"(2) Sexual abuse in the first degree is a Class C felony." ORS 163.425.

458

state conceded that there was no evidence of attempted rape, but opposed dismissal on the ground that the state had proved that Knox was guilty of sexual abuse, which it argued was a lesser included offense of the crime of attempted rape. The court rejected the state's lesser-included-offense argument and granted the juvenile's motion, saying:

> "The petition dated June 12, 1974 alleges attempted rape in the first degree, ORS 163.375. The evidence proved sexual abuse in the first degree, ORS 163.425. The defense motion for a dismissal for failure of proof is allowed."

The state, relying on ORS 419.561(1), appeals from the dismissal of the petition, alleging that the juvenile court erred in denying the state's motion to amend the petition and, in the alternative, that the juvenile court erred in failing to hold that sexual abuse is a lesser included offense in the crime of attempted rape.

ORS 419.561(1) provides in part:

> "Any person whose rights or duties are adversely affected by a final order of the juvenile court may appeal therefrom * * *."

This court must interpret this statute in a manner consistent with the United States and Oregon Constitutions. Consequently, we must decide whether the constitutional prohibitions against double jeopardy bar an appeal by the state from the dismissal by the juvenile court of a petition in a juvenile proceeding in which the juvenile is charged with an act which would be a crime if committed by an adult due to a failure of proof.

■ If this were a criminal case, this appeal would clearly be barred by the double jeopardy clause. The

dismissal was caused by the state's failure to charge the correct crime in its petition to the juvenile court and the court's refusal to allow the state to amend its petition at the start of the hearing. Even assuming that the court was in error in refusing to allow the state to amend its petition, errors of this type on the part of the state or the judge in a criminal proceeding cannot be the basis of an appeal by the state or a new trial without violating the double jeopardy clause. *Price v. Georgia,* 398 US 323, 90 S Ct 1757, 26 L Ed2d 300 (1970); *Kepner v. United States,* 195 US 100, 24 S Ct 797, 49 L Ed 114 (1904); *United States v. Sanges,* 144 US 310, 12 S Ct 609, 36 L Ed 445 (1892).

Whether the same result is compelled here has not been squarely resolved by either the Oregon courts or the United States Supreme Court.

■ However, the United State Supreme Court has dealt with some of the procedures a juvenile court is constitutionally required to follow. In *In re Gault,* 387 US 1, 87 S Ct 1428, 18 L Ed2d 527 (1967), the Supreme Court began with the proposition that:

"* * * [W]hatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." 387 US at 13.

The court went on to discuss the fact that although special considerations are involved in juvenile proceedings which are not present in criminal proceedings, in some ways the two are similar:

"* * * A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence—and of limited practical meaning—that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a

'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time * * *.

"In view of this, it would be extraordinary if our Constitution did not require the procedural regularity and the exercise of care implied in the phrase 'due process.' Under our Constitution, the condition of being a boy does not justify a kangaroo court * * *." 387 US at 27-8.

The court held that while a juvenile proceeding does not have to conform to all of the requirements of a criminal trial the proceeding "must measure up to the essentials of due process and fair treatment." 387 US at 30. Specifically, a juvenile must be afforded notice of the charges against him, the right to counsel, the privilege against self-incrimination and the right to confront and cross-examine witnesses. These rights must be afforded despite the fact that these procedures may considerably formalize juvenile proceedings.

In the case of *In re Winship,* 397 US 358, 90 S Ct 1068, 25 L Ed2d 368 (1970), the court again considered the requirements of due process in juvenile proceedings. The issue in that case was whether due process requires the criminal-law-standard of proof beyond a reasonable doubt in the adjudicatory stage of a juvenile proceeding in which commission of a criminal act is charged.

The court first held that proof beyond a reasonable doubt was constitutionally required in adult criminal proceedings, then extended this requirement to juvenile proceedings, saying:

"We made clear in * * * [*Gault*] that civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts * * *." 397 US at 365-66.

The Supreme Court has, however, refused to extend all of the due process requirements of criminal cases to juvenile proceedings. In *McKeiver v. Pennsylvania,* 403 US 528, 91 S Ct 1976, 29 L Ed2d 647 (1971), the court considered whether due process requires that the right to trial by jury be afforded in juvenile proceedings. In holding that a jury trial is not constitutionally required for juveniles, the court relied on its policy that states should be allowed to experiment with different procedures in their juvenile court systems, provided that these procedures do not adversely affect the interests of the juvenile. The court concluded that "* * * one cannot say that in our legal system the jury is a necessary component of accurate factfinding," 403 US at 543, therefore, no prejudice to the juvenile would result from not requiring a jury trial. The court pointed out the disadvantages which it felt to be inherent in requiring jury trials for juveniles, saying:

> "If the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial * * *." 403 US at 550.

The court also quoted from one of several lower court decisions under review in *McKeiver, In re Terry,* 438 Pa 339, 265 A2d 350, 355 (1970), which said:

> " '* * * [O]f all the possible due process rights which could be applied in the juvenile courts, the right to trial by jury is the one which would most likely be disruptive of the unique nature of the juvenile process * * *.' " 403 US at 540.

In short, the court refused to require a jury trial for juvenile offenders because it would not substantially benefit the juvenile and would be very likely to hurt,

462

and perhaps destroy, the juvenile court system. *See also, State v. Turner,* 253 Or 235, 453 P2d 910 (1969), where the Oregon Supreme Court held that jury trials are not required in juvenile proceedings, relying on much the same reasoning as was later employed by the United States Supreme Court.

 The principal which emerges is that any procedure constitutionally required in criminal proceedings which is one of the "essentials of due process and fair treatment," will be required in juvenile proceedings, where loss of liberty is at stake, particularly if that procedure will not impair the benefits which the states seek to promote by the establishment of separate juvenile court systems. Under this analysis we conclude that double jeopardy protection is required in a juvenile proceeding of the type before us here.

The Supreme Court has stressed the importance of the prohibition against double jeopardy. In *Benton v. Maryland,* 395 US 784, 89 S Ct 2056, 23 L Ed2d 707 (1969), where it held that the double jeopardy clause applies to the states through the Fourteenth Amendment, the court said:

"* * * [T]he double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage * * *." 395 US at 794.

The court then quoted from *Green v. United States,* 355 US 184, 187-88, 78 S Ct 221, 2 L Ed2d 199, 61 ALR2d 1119 (1957):

"'* * * [t]he underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State * * * should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense

and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty * * *.' " 395 US at 795-96.

The court in *Benton* goes on to add:

"* * * Like the right to trial by jury it [protection against double jeopardy] is clearly 'fundamental to the American scheme of justice.' * * *." 395 US at 796.

As noted above, the Supreme Court has refused to require jury trials in juvenile proceedings. However, the reason for this refusal was the court's conclusion that requiring jury trials would destroy the special benefits of the juvenile court system, without substantially benefiting the juvenile.

■ We therefore hold that the constitutional prohibition against double jeopardy applies in juvenile proceedings where a juvenile is charged with a criminal act and is therefore subjected to possible loss of liberty.

Our holding is in accord with the results reached by several federal and state courts. A pre-*Gault* case, *United States v. Dickerson,* 168 F Supp 899 (DC Cir 1958), *reversed on other grounds* 271 F2d 487 (1959), held that irrespective of whether a juvenile proceeding is labeled civil or criminal, the double jeopardy clause must apply:

"* * * [C]onstitutional rights cannot be diminished or whittled away by the device of changing names of tribunals or modifying the nomenclature of legal proceedings. *The test must be the nature and the essence of the proceeding rather than its title. If the result may be a loss of personal liberty, the constitutional safeguards apply.*" (Emphasis supplied.) 168 F Supp at 902.

*Jones v. Breed,* 497 F2d 1160 (9th Cir), *cert granted* — US ——, 95 S Ct 172, 42 L Ed2d 138 (1974), also held the double jeopardy clause applicable in juvenile proceedings. There the court distinguished double jeopardy and the right to a jury trial in the following way:

"* * * Whether a jury is required deals with the method of juvenile adjudication; whether double jeopardy applies goes to the very core of basic application of rights and does not affect how the juvenile is tried * * *." 497 F2d at 1165.

Several state courts have reached the same conclusion. *See, Richard M. v. Superior Court,* 4 Cal3d 370, 93 Cal Rptr 752, 482 P2d 664 (1971); *People v. Int. of P.L.V.,* 176 Colo 342, 490 P2d 685 (1971); *In re Juvenile,* 306 NE2d 822 (Mass 1974); *Collins v. State,* 429 SW2d 650 (Tex Civ App 1968).

There are some state court cases which hold that the double jeopardy clause is inapplicable in juvenile proceedings, apparently based on the rationale that juvenile proceedings are not criminal in nature. *See, In re McDonald,* 153 A2d 651 (Mun Ct DC 1959); *Moquin v. State,* 216 Md 524, 140 A2d 914 (1958); *State v. Smith,* 75 ND 29, 25 NW2d 270 (1946). However, these cases are pre-*Gault,* and in view of the holdings in *Gault* and *Winship,* they are of doubtful validity today.

We do not hold that ORS 419.561(1) is unconstitutional. We hold only that it cannot be interpreted to authorize an appeal by the state from an order tantamount to a judgment of acquittal in a proceeding where a juvenile was tried for the commission

of a criminal act.[4] However, we think it apparent from *Gault* and its progeny that there is a need for an updated juvenile code to reflect developments in this area of the law.

Appeal dismissed.

---

[4] The state asserts in its brief that whatever the result of this appeal they could still file another petition charging Knox with sexual abuse because the petition in the present case was dismissed due to a variance between the crime charged and the proof. *See,* State v. Jones, 240 Or 546, 402 P2d 738 (1965); State v. Ayers, 16 Or App 655, 520 P2d 449, Sup Ct *review denied* (1974). We need not here reach that issue.