Argued and submitted July 14, affirmed October 6,
reconsideration denied November 20, 1980,
petition for review denied February 4, 1981 (290 Or 449)

# In the Matter of Michael Gerald Vandenberg, Alleged to be Mentally Deficient,

## STATE ex rel VANDENBERG,
*Respondent,*

*v.*

## VANDENBERG,
*Appellant.*

(No. 1158, CA 15533)

617 P2d 675

Jossi Davidson, Silverton, argued the cause and filed the brief for appellant.

Richard M. Botteri, Portland, argued the cause and filed the brief for respondent.

James C. Rhodes, Assistant Attorney General, Salem, waived appearance for State of Oregon.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

## ROBERTS, J.

■     This case presents a challenge to commitment proceedings for mental deficiency under former ORS ch 427.[1] Defendant challenges the constitutionality of the commitment procedure, and argues that principles of double jeopardy and res judicata are applicable to this case. He further contends that the standard of proof required in the commitment hearing was proof "beyond a reasonable doubt" and that this standard was not met.[2]

The trial court overruled defendant's demurrer alleging the vagueness of the underlying statute and denied a motion to dismiss based on a previous commitment proceeding. We affirm the certification of mental deficiency and order of commitment.

Defendant is a 21-year-old man first admitted voluntarily to Fairview Hospital and Training Center at the age of 17. He was a resident there from August to November, 1976, and was again voluntarily admitted in February of 1977. In August, 1977, defendant turned 18, and was evaluated pursuant to former ORS 427.250 to determine whether he was still mentally deficient and in need of further residential care, treatment, training or education. The two psychologists who examined defendant in the spring and summer of 1978 found him not to be mentally deficient.

---

[1] Defendant's involuntary commitment pursuant to former ORS 427.059 was the result of an action commenced in June, 1979. That portion of chapter 427 dealing with commitment procedure was repealed and replaced by Oregon Laws 1979, ch 683, which took effect October 3, 1979.

[2] Defendant also argues that the judge below erred in failing to allow defense counsel's closing argument. The record shows, however, that at the close of testimony, the court asked counsel for both parties if there would be "anything further," to which defense counsel replied, "We have nothing." The judge then made his ruling. Whatever misunderstanding this may evidence, defense counsel made no objection at the time. This alleged error is thus not properly before us. *Liberty Mutual Fire Ins. v. Hubbard,* 275 Or 567, 551 P2d 1288 (1976), *Weber v. Kamyr, Inc.,* 269 Or 617, 634, 525 P2d 1307 (1974).

Fairview's chief medical officer disagreed and filed a petition on behalf of the Mental Health Division alleging defendant was mentally deficient and in need of care and treatment. A full hearing was held in October, 1978. This proceeding was dismissed by the trial court when the representative of the Fairview Hospital administration testified it was the institution's position that defendant was not mentally deficient.[3]

In March, 1979, defendant entered a residential group home in Portland. He reportedly had behavioral problems there, including failure to take medication to control his epileptic seizures, stealing money, failure to attend a work program or keep specified hours, and running away. Defendant's father then filed a petition to commit him to the Mental Health Division, pursuant to former ORS 427.015. A precommitment examination was ordered, and defendant was found to be mentally deficient. The recommendation by the examining institution, Fairview Hospital, was that defendant be returned to its care. The trial judge certified that defendant was mentally deficient and ordered his commitment to the Mental Health Division in August, 1979.

Defendant alleges that the statutory procedure under which he was committed, former ORS 427.015 *et seq,* was unconstitutionally vague and overbroad in that no definition of "mental deficiency" was contained in the statute. However, in commitment of the mentally deficient, the court does not play the same fact-finding role that it does in commitment of the mentally ill under ORS ch 426. In commitment of

---

[3] Former ORS 427.059(1) provided:

"(1) If the findings of the examining facility or institution are that the person is mentally deficient, the judge may certify that the person is mentally deficient. If he certifies that the person is mentally deficient, he may order the person committed to the Mental Health Division."

The trial judge concluded that he had no independent authority to make a finding of mental deficiency where the examining institution had declined to do so.

the mentally ill the court is empowered to "determine" (ORS 426.130) whether a person is

"(2) * * * because of a mental disorder * * * either

"(a) [d]angerous to himself or others; or

"(b) [u]nable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety.

"* * * * *." ORS 426.005(2)(a) and (b).

Statutes for the commitment of the mentally ill, when strictly construed, were held not to be unconstitutional on the grounds of vagueness in *State v. O'Neill,* 274 Or 59, 66, 545 P2d 97 (1976), the Supreme Court noting that the state has a legitimate interest in providing care and assistance to the unfortunate.[4]

In commitment proceedings for the mentally deficient, the standard for commitment is set by scientific tests monitoring levels of intellectual functioning and adaptive behavior. This fact-finding authority was vested in the Mental Health Division. ORS 430.041(1). Under the former statute, the court was authorized to "certify" a person as mentally deficient only after the examining institution had so found.

A statutory and administrative scheme for the commitment of minors by their parents in the state of Georgia was recently found by the United States Supreme Court to be constitutionally sound. *Parham v. J. R.,* 442 US 584, 99 S Ct 2493, 61 L Ed 2d 101 (1979). In *Parham,* the Georgia statute allowed for a determination by the superintendent of each institution as to whether a child showed evidence of mental illness and should be admitted. There were no administrative regulations defining procedures the superintendents should use in making such a determination. The Supreme Court held the lack of regulations did not vest unbridled discretion in the admitting physicians, even where procedures differed from institution to institution.

---

[4] Citing *O'Connor v. Donaldson,* 422 US 563, 95 S Ct 2486, 45 L Ed 2d 396 (1975).

■ Unlike the Georgia scheme, Oregon's former commitment statute for mental deficiency was supplemented by detailed administrative rules which provided a standard for finding a person mentally deficient.[5] In addition, former ORS 427.059 and 427.062

---

[5] OAR 309-42-000 provides in pertinent part:

"(1) Purpose. This rule prescribes criteria for voluntary admission to a state institution for the mentally retarded and criteria for the examining authority's recommendation to a court on commitment of a person alleged to be mentally retarded to the Mental Health Division. This rule also prescribes a procedure for the release of certain residents from state institutions for the mentally retarded.

"(2) Statutory Authority and Procedure. This rule is authorized by ORS 430.041(1) and carries out the provisions of ORS Chapter 427.

"(3) Definitions. As used in this rule:

"(a) 'Division' means the Mental Health Division of the Department of Human Resources.

"(b) 'Examining authority' means the Diagnosis and Evaluation service of the Mental Health Division or any facility designated by the Diagnosis and Evaluation Service to act as an examining authority for the purpose of this rule.

"(c) 'Mental retardation' means significantly subaverage general intellectural [*sic*] functioning existing concurrently with deficits in adaptive behavior and manifested during the developmental period. Persons of borderline intelligence may be considered mentally retarded if there is also serious impairment of adaptive behavior. Definitions and classifications shall be consistent with the 'Manual on Terminology and Classification in Mental Retardation' of the American Association on Mental Deficiency, 1977 Revision. Mental retardation is synonymous with mental deficiency:

"(A) 'Adaptive behavior' means the effectiveness or degree with which an individual meets the standards of personal independence and *social responsibility expected for age* and cultural group.

"(B) 'Developmental period' means the period of time between birth and the 18th birthday.

"(C) 'Intellectual functioning' means functioning as assessed by one or more of the individually administered general intelligence tests developed for that purpose.

"(D) 'Significantly subaverage' means a score on a test of intellectual functioning that is two or more standard deviations below the mean for the test.

"(d) 'State institution' means Fairview Hospital and Training Center and Eastern Oregon Hospital and Training Center of the

provided for judicial review of the administrative finding, and an adversary hearing, including the appointment of counsel. Oregon's commitment scheme thus vastly exceeds the procedural safeguards accepted by the United States Supreme Court in *Parham*. We hold that under the standards of *Parham* and *O'Neill*, former ORS 427.015 *et seq* was neither constitutionally vague nor procedurally infirm and did not violate defendant's rights under the Fourteenth Amendment to the United States Constitution.

■      The trial court's denial of a motion to dismiss on the ground of a previous proceeding was proper. Defendant's contentions that double jeopardy or res judicata operate as a bar to two consecutive mental commitment proceedings have no merit. First, a mental commitment proceeding, though it involves a serious deprivation of liberty, is not a criminal proceeding. *State v. O'Neill, supra,* 274 Or at 72. Thus the principle of double jeopardy has no application.

---

Mental Health Division or any other Mental Health Division facility that accepts transferees from these two institutions.

"(4)  Admission Criteria. Before the name of a person whose application form has been approved is placed on the waiting list for admission to a state institution for the mentally retarded, or before an examining authority may recommend to a court the commitment of an allegedly mentally retarded person to the Mental Health Division, the diagnosis and Evaluation Service of the Division shall determine that:

"(a)  An examining authority has found the person to be mentally retarded based upon the 'Manual on Terminology and Classification in Mental Retardation' of the American Association on Mental Deficiency, 1977 Revision, including a comprehensive evaluation covering physical, social, and cognitive factors and considering past and present behavior of the person. In addition to those persons' meeting the AAMD definitions, the manual allows that persons who score in the borderline range (IQ 70— 79) on tests of intellectual functioning may be diagnosed mildly retarded if their adaptive behavior is in the retarded range, unless the examiner can definitely attribute the adaptive deficits to such factors as mental or emotional disturbance, sensory impairments, or other such variables.

"(b)  Admission to a state institution for the mentally retarded is determined to be the optimal available plan and is in the best interest of the person and the community. * * *

"* * * * *."

■ The principle of res judicata likewise has no application in this particular case. In order for the doctrine of res judicata to apply, the prior lawsuit must have ended in an adjudication of issues which culminated in a final decree. *McAllister v. Charter First Mortg., Inc.,* 279 Or 279, 285, 567 P2d 539 (1977), *Huszar v. Certified Realty Co.,* 272 Or 517, 523, 524, 538 P2d 57 (1975). Defendant's prior commitment proceeding was dismissed by the court, without findings, after an administrative determination that the defendant was not mentally deficient. *See* n 3, *supra.*

At the close of the testimony in the August, 1979, hearing, the trial judge found he had been convinced beyond a reasonable doubt that the defendant suffered from mild mental retardation. We believe this was the proper standard to apply and we believe it was met.

■ Prior to the 1979 revisions, ORS ch 427 did not specify any standard of proof for a determination of mental deficiency. Since, however, the deprivation of liberty involved in a commitment for mental deficiency is at least as great as that in mental illness,[6] the standard the court should have used in evaluating evidence relied upon by Fairview should have been that required for commitment as a mentally ill person. The standard then was proof "beyond a reasonable doubt."[7]

■ In determining whether this standard of proof was met, we review de novo as in commitments of the mentally ill. *State v. O'Neill, supra, State v. Arnold,* 36 Or App 869, 586 P2d 93 (1978). However, substantial weight is accorded the findings of the trial court, which had an opportunity to observe and question the

---

[6] Under old and new ORS ch 426, committees for mental illness have their status reviewed every 180 days. There was no comparable provision for the mentally deficient under former ORS ch 427.

[7] Former ORS 426.130. We note that the standard for commitment under both chapters was made the same and changed to "clear and convincing evidence" by the 1979 amendments. ORS 426.130, 427.290. This is in keeping with the United States Supreme Court's holding in *Addington v. Texas,* 441 US 418, 99 S Ct 1804, 60 L Ed 2d 323 (1979).

defendant. *State v. Watkins,* 35 Or App 87, 581 P2d 90 (1978).

Under OAR 309-42-000(3)(c), certification for mental deficiency requires a showing of three elements: (1) a significantly subaverage performance on general intelligence tests, (2) a failure to meet the standards of personal independence and social responsibility expected for the age and cultural group, and (3) manifestation of these conditions during the time period before the subject's 18th birthday.

■    The record below, which incorporates the transcript from the October, 1978 hearing, shows that five doctors testified as to defendant's condition. A physician, a psychiatrist and two psychologists testified that defendant's IQ was significantly subaverage. His adaptive behavior was found to be impaired by every doctor except the two psychologists who examined defendant before his discharge from Fairview and the behavioral incidents which took place thereafter, during defendant's stay at the Portland group home. Thirdly, defendant was diagnosed as retarded on three separate occasions before his 18th birthday. This places the first recognition of defendant's condition within the developmental period.

The evidence established beyond a reasonable doubt that defendant suffers from mild mental retardation. The certification of mental deficiency and order of commitment were proper. We affirm.

Affirmed.