Argued and submitted August 10, 1981; resubmitted In Banc April 7, reversed and remanded for trial May 12, reconsideration denied July 1, petition for review allowed August 3, 1982 (293 Or 456)

# STATE OF OREGON,
*Appellant,*

*v.*

# FRANK J. THOMPSON,
*Respondent.*

## (No. 25352, CA A20277)

644 P2d 608

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

James K. Gardner, Hillsboro, argued the cause and filed the brief for respondent.

THORNTON, J.

Reversed and remanded for trial.

## THORNTON, J.

Defendant was charged with criminal trespass in the second degree. ORS 164.245. While that charge was pending, he was convicted of contempt and fined for the same conduct which had resulted in the criminal charge. On defendant's motion, the trial court dismissed the criminal charge on double jeopardy[1] grounds. The state appeals. We reverse.

Defendant and his neighbor have been engaged in a prolonged property dispute. Defendant obtained a decree granting him an easement over his neighbor's property. The decree was reversed on appeal, *Thompson v. Scott,* 270 Or 542, 528 P2d 509 (1974), and the trial court thereafter permanently enjoined defendant from entering the property. *See Thompson v. Columbia County Comm'rs,* 29 Or App 813, 564 P2d 1376, *rev den* 280 Or 171 (1977). After defendant violated that injunction by grading a portion of a road on his neighbor's property, he was indicted for criminal trespass. Before the criminal charge was tried, defendant's neighbor initiated contempt proceedings, and defendant was found guilty of contempt and fined $500. That conviction was affirmed on appeal. *Thompson v. Scott,* 51 Or App 367, 625 P2d 688, *rev den* 291 Or 151 (1981). The trial court thereupon allowed defendant's motion to dismiss this criminal charge.

■ ■    Contempts may be civil or criminal. In a civil contempt the contemnor violates a decree or order of the court made for the benefit of an adverse party litigant. In a criminal contempt a court's process is violated or disobeyed, and disrespect of the court is manifested. *State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 480, 405 P2d 510, 407 P2d 250 (1965), *cert den* 384 US 943 (1966).

The state relies on ORS 33.130:

---

[1] The Fifth Amendment to the United States Constitution provides in relevant part:

"* * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."

Article 1, § 12 of the Oregon Constitution provides in relevant part:

"No person shall be put in jeopardy twice for the same offense * * *."

"Persons proceeded against for contempt are also liable to indictment for the same misconduct, if it is an indictable offense, but the court before which a conviction is had on the indictment, in passing sentence, shall take into consideration the punishment before inflicted."

Although our contempt statutes, ORS 33.010 *et seq,* do not distinguish between civil and criminal contempt, the Supreme Court has drawn a distinction in terms of the purpose of the contempt proceeding:

"* * * In a nutshell, criminal contempt is contempt which is *punished,* usually by fine and/or imprisonment. Civil contempt is contempt in which the court's sanction is intended to compel compliance with the court's order, such as jailing a recalcitrant witness until the witness answers questions which the court has ordered to be answered." *In the Matter of Virginia Hanks,* 290 Or 451, 458 n 10, 623 P2d 623 (1981) (Emphasis in original.)

The United States Supreme Court explained in *Shillitani v. United States,* 384 US 364, 86 S Ct 1531, 16 L Ed 2d 622 (1966), that it is the ability of the contemnor to purge himself of his sentence by agreeing to perform some act which renders an action a civil contempt proceeding and which justifies the absence of the incidents of a criminal proceeding, such as indictment and jury trial, which are not constitutionally required in a civil contempt proceeding.

The general rule followed in this country seems to be that one committing an act which he is enjoined from committing and which is a violation of a penal law may be punished for contempt for violating the injunction, and he may be punished also for a violation of the criminal law. 22 CJS, Criminal Law § 293 (1961). The same rule is stated in 21 Am Jur 2d, Criminal Law § 249 (1981). *See also* Words and Phrases, Double Jeopardy, p 551 ff. For example, in *O'Malley v. United States,* 128 F2d 676, 684 (8th Cir 1942), *rev on other grounds* 317 US 412, 63 S Ct 268, 87 L Ed 368 (1943), it was stated that punishments for contempt of court and on conviction under an indictment for the same acts do not result in "double jeopardy." Similarly, in *United States v. Mirra,* 220 F Supp 361 (SD NY 1963), it was held that the double jeopardy provision did not prevent the criminal prosecution of the defendant, who hurled the

witness chair at the Assistant U. S. Attorney prosecuting the case and was summarily held in contempt of court for the assault on the attorney. While we recognize that there are some cases to the contrary, we are not persuaded that these are the better reasoned authorities.

■　　　Turning to the case at bar, the contempt proceeding involved here was purely civil. It arose out of a civil proceeding equitable in nature. The injunction which defendant was found to have violated was likewise purely civil in nature. The contempt proceeding was instituted by Scott's affidavit and was tried by Scott's attorney, not the district attorney. Obviously, defendant was not entitled to a jury trial. To hold as argued by the dissent that this contempt proceeding constituted double jeopardy as a bar to a subsequent criminal prosecution is, in our view, to obliterate entirely the distinction between the civil and criminal law and turn the entire process upside down. The purpose of the contempt power of the court is to enforce court orders or to punish violations of court orders. Its aim is to preserve the integrity of the court system itself. That is quite a different purpose than the criminal statutes.

Although there appears to be no Oregon appellate decision directly in point, prior decisions dealing with related issues are instructive. In *State v. Morrow,* 158 Or 412, 75 P2d 737, 76 P2d 971 (1938), our Supreme Court held that a filiation proceeding in which defendant was charged with being the father of a child did not place defendant in jeopardy, and hence was not a bar to a subsequent prosecution for rape. The court declared: "[J]eopardy has application to proceedings which subject the guilty to an imposition of a penalty." *State v. Morrow, supra,* 158 Or at 416. In *State v. Bowling,* 1 Or App 103, 459 P2d 454 (1969), we held that an individual is not placed in double jeopardy when punished by the prison disciplinary board and then by a court for an escape or attempted escape from official detention. *Accord State v. Eckley,* 34 Or App 563, 579 P2d 291 (1978) (probation revocation hearing); *State ex rel Vandenberg v. Vandenberg,* 48 Or App 609, 617 P2d 675 (1980) *rev den* 290 Or 449, *dismissed for want of a substantial federal question,* sub nom *Vandenborg v. Oregon,* 454 US 805, (1981) (mental commitment proceeding).

Similarly, in *State v. Jacobs,* 55 Or App 406, 637 P2d 1377 (1981), this court held that a district attorney was not barred from prosecuting a defendant for selling unregistered securities because the State Corporation Commission obtained the defendant's consent to an administrative cease and desist order by promising to discontinue his investigation of the whole matter. We said:

"* * * Because the Commissioner's enforcement power is wholly civil, the cease and desist order * * * did not preclude the district attorney from prosecuting him for violating the securities law." 55 Or App at 409-10.

In summary, on the basis of ORS 33.130, as well as principle and authority, we believe the proper rule is that punishment for an indirect contempt (disobedience of a restraining order) does not bar prosecution for a criminal violation involving the same facts.

Reversed and remanded for trial.

**VAN HOOMISSEN, J.,** dissenting.

I would hold that after a conviction for criminal contempt, the Double Jeopardy Clause of the Fifth Amendment bars a subsequent criminal prosecution for the same offense. The majority, in reaching the opposite result, ignores both strong precedent from the United States Supreme Court and the essentially criminal nature of a criminal contempt proceeding.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 US 784, 89 S Ct 2056, 23 L Ed 2d 707 (1969), applies not only to criminal prosecutions, but to proceedings which are criminal in nature. In *Breed v. Jones,* 421 US 519, 95 S Ct 1779, 44 L Ed 2d 346 (1975), the Supreme Court held that despite the originally benign conception of juvenile delinquency proceedings, double jeopardy bars a subsequent criminal prosecution for the same acts for which a person had already been tried in a juvenile court.[1] The court stated that in determining the applicability of constitutional protections,

---

[1] Juveniles are entitled to double jeopardy protection. *State ex rel Juv. Dept. v. Knox,* 20 Or App 455, 532 P2d 245 (1975).

courts must "eschew the 'civil' label of convenience which has been attached to juvenile proceedings," 421 US at 529, and candidly appraise the juvenile process. Evaluating the kind of risk and burden involved in a juvenile delinquency adjudication, the court found it similar enough to a criminal prosecution for double jeopardy to apply. The court placed heavy reliance on the fact that an adjudication of juvenile delinquency put the child at risk of incarceration.

The United States Supreme Court addressed the nature of criminal contempt proceedings when it was required to decide if the right to a jury applied. In holding that a defendant in a "serious" criminal contempt proceeding had a right to a jury trial, the court stated:

"Criminally contemptuous conduct may violate other provisions of the criminal law; but even when this is not the case convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same. Indeed, the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates.

"* * * [C]riminal contempt is a crime in every fundamental respect * * *." *Bloom v. Illinois,* 391 US 194, 201, 88 S Ct 1477, 20 L Ed 2d 522 (1968).

The Supreme Court has also held that a defendant in an indirect criminal contempt proceeding in federal court has due process rights of notice and hearing. *Harris v. United States,* 382 US 162, 86 S Ct 352, 15 L Ed 2d 240 (1965).

We must thus examine the contempt proceeding involved here to determine if it partakes enough of the characteristics of a criminal proceeding so that jeopardy attaches. It is a proceeding which has both civil and criminal characteristics. It is civil in that it may be initiated and prosecuted by a private party, ORS 33.040; 33.060, and in that the court "may" award a party aggrieved by the contempt a money judgment. ORS 33.110.

On the other hand, a criminal contempt proceeding is criminal in several important regards. First, if an alleged contemnor is indigent and faces possible incarceration, he has the right to appointed counsel. ORS 33.095(2). Second, an alleged contemnor is subject to arrest and may be held in custody in lieu of bail. ORS 33.070; 33.080. In *Brown v.*

*Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977), the latter was an important factor in deciding that a traffic "infraction," as defined by the legislature, was in essence a criminal offense which required constitutional protections. 280 Or at 108. Third, a convicted contemnor faces punishment for the contempt, which the statutes direct "shall" be imposed. ORS 33.100, as opposed to a civil judgment, which "may" be imposed, ORS 33.110.

The Double Jeopardy Clause protects against risk, not result, *Breed v. Jones, supra,* 421 US at 528. To determine the severity of the risk to which defendant was exposed, which bears on the question of whether he is entitled to double jeopardy protection, we must examine the maximum punishment defendant could have received, as well as the punishment actually imposed. In cases of nondisruptive criminal contempts, ORS 33.020(1) limits the punishment to a $100 fine, unless the right or remedy of a litigant was prejudiced by the contempt. In other criminal contempts, punishment is limited to a fine of $300 and imprisonment of six months, or both. The $500 fine imposed in the present case exceeded both limitations.[2] In *State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 405 P2d 510, 407 P2d 250 (1965), *cert den* 384 US 943 (1966), it was held that the contempt power of a constitutionallyestablished court may be regulated by the legislature onlywithin reasonable bounds and that the $100 limitation on punishment found in the last clause of ORS 33.020(1) was unconstitutional. The court left open the power of the legislature to regulate the contempt powers of a legislatively established court and its power to limit the punishment for nondisruptive, nonprejudicial contempts to fines, as opposed to imprisonment.[3] *Lenske* would have been at least colorable authority for the imposition of imprisonment on the present defendant. The $500 fine actually imposed shows that the trial court believed that it had inherent

---

[2] In his unsuccessful appeal to this court from his contempt conviction, defendant did not argue the excessiveness of his sentence.

[3] Cases subsequent to *State ex rel Oregon State Bar v. Lenske, supra,* have assumed, without deciding, that a showing of prejudice is required for the imposition of imprisonment. *See, e.g., In the Matter of Virginia Hanks,* 290 Or 451, 623 P2d 623 (1981); *State ex rel Spencer v. Howe,* 281 Or 599, 576 P2d 4 (1978).

contempt powers beyond those given by the legislature. The fine, clearly excessive under the statute, at least withstood appellate review by this court and by the Supreme Court.[4] Defendant was thus required to endure a not unreal risk of imprisonment because of the contempt proceeding.

The very fact of the unsettled law as to the allowable potential punishment in itself contributed to the magnitude of the risk. The potential penalty need not be great. In *Robinson v. Neil,* 409 US 505, 93 S Ct 876, 35 L Ed 2d 29 (1973), the court found that jeopardy attached in a municipal court conviction, even though the defendant had received only a $50 fine on each of three counts of assault, which had a maximum punishment of 30 days imprisonment or $50 fine or both.[5] Even if defendant here was not subject to imprisonment, "the absence of potential imprisonment does not conclusively prove a punishment noncriminal." *Brown v. Multnomah County Dist. Ct., supra,* 280 Or at 103. The fine imposed was punitive in nature. It was no less coercive than are ordinary criminal convictions.

The cases relied upon by the majority either predate *Breed v. Jones, supra,* or are not directly on point. In *State v. Eckley,* 34 Or App 563, 579 P2d 291 (1978), the court noted that the function of a probation revocation hearing is not to punish anew for an offense but "to determine whether to impose or execute a sentence for the offense of which defendant has already been convicted * * *." 34 Or App at 567. A mental commitment proceeding, *State ex rel Vandenberg v. Vandenberg,* 48 Or App 609, 617 P2d 675 (1980), *rev den* 290 Or 449 (1981), although it involves a deprivation of liberty, addresses the *status* of a person alleged to be in need of involuntary commitment, not the sanction required for any one particular act. In *State v. Jacobs,* 55 Or App 406, 637 P2d 1377 (1981), the extraction of consent to an administrative cease and desist order by the Corporation Commissioner involved no penal sanction.

On the other hand, the recent cases from other jurisdictions which have addressed the exact question

---

[4] *But see* n 2, *supra*

[5] *See Robinson v. Henderson,* 268 F Supp 349 (ED Tenn 1967).

involved here have uniformly held that double jeopardy applies to direct criminal contempt proceedings. *United States v. United States Gypsum Company,* 404 F Supp 619 (DDC 1975); *People v. Gray,* 69 Ill 2d 44, 12 Ill Dec 886, 370 NE2d 797 (1977), *cert den* 435 US 1013 (1978); *People v. Colombo,* 31 NY2d 947, 293 NE2d 247 (1972); *People v. Lombardo,* 50 Cal App 3rd 849, 123 Cal Rptr 755 (1975); *Simanonok v. Randle,* 388 So2d 45 (Fla App 1980).

The majority's reliance upon ORS 33.130 is also misplaced. It is the constitutionality of this statute which is at issue. Although under my view the statute is unconstitutional as applied, in the present situation, it would retain some constitutional applications. In cases of direct contempt when the contemnor is summarily punished, he is not forced to "run the gamut" of prosecution, and jeopardy would not attach. *See, e.g., United States v. Mirra,* 220 F Supp 361 (SD NY 1963). In a civil contempt case, the contemnor has the ability to purge himself of the contempt, so it is not the state which puts him in jeopardy.

I conclude that double jeopardy has application to a direct, criminal contempt proceeding. Once jeopardy has attached, a subsequent prosecution for the "same offense" is barred. The Supreme Court has stated:

"The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States,* 284 U.S. 299, 304 [52 S Ct 180, 76 L Ed 306] (1932):

" 'The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not....'

"This test emphasizes the elements of the two crimes. 'If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes....' *Iannelli v. United States,* 420 U.S. 770, 785 n. 17 [95 S Ct 1284, 43 L Ed 2d 616] (1975)." *Brown v. Ohio,* 432 US 161, 166, 97 S Ct 2221, 53 L Ed 2d 187 (1977).

Defendant was found in contempt for violating a decree in which he was "permanently enjoined and

restrained from * * * passing across or taking any equipment of any kind across" his neighbor's property. A person commits the crime of criminal trespass if he "enters or remains unlawfully in or upon premises," ORS 164.245(1), which premises are not open to the public without license or privilege. ORS 164.205(3)(a). Technically the contempt includes an element not present in the crime (knowledge of the court order), and the crime includes an element not present in the contempt (absence of license or privilege), but when the judicial gloss that the contempt of violation of a court order must be "willful and with bad intent," *see State ex rel Oregon State Bar v. Wright,* 280 Or 713, 573 P2d 294 (1977), is considered, the two violations appear congruent enough to constitute the same offense. This distinguishes the situation where the conduct constituting the violation of the court order also constitues a criminal offense which goes beyond the conduct enjoined by the order. For example, when a wife in a divorce proceeding is enjoined from having any contact with her husband and then physically assaults him, she may be prosecuted both for the contempt and for the crime of assault, because the two are different offenses under the *Blockburger* test. *See People v. Gray, supra,* 69 Ill 2d at 53 (Ryan, J., dissenting). Such a court order protects against some perfectly legal as well as criminal conduct. Here, however, I cannot envision any conduct which would violate the court's decree without also violating the criminal trespass statute. Defendant is being tried twice for essentially the same offense.

Because jeopardy attached to the contempt proceeding, and because the crime of criminal trespass constitutes the "same offense" as contempt of the court order, double jeopardy barred the criminal prosecution.

Joseph, CJ, Richardson and Buttler, JJ, join in this dissent.