Argued and submitted March 31, reversed and remanded June 24, 1987

STATE OF OREGON,
*Respondent,*

*v.*

RONALD MOEN,
*Appellant.*

(86-C-20504; CA A39495)

738 P2d 228

Richard L. Cowan, Salem, argued the cause and filed the brief for appellant.

David Schuman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Defendant appeals from a judgment finding him guilty of contempt of court for failure to obey a duly served subpoena.[1] Defendant's only contention on appeal is that the trial court's authority to punish him for contempt is, under the facts, limited to a fine not exceeding $100. We agree and reverse.

On March 16, 1986, defendant was served a subpoena to appear before a grand jury on March 20. On March 19, 1986, the state obtained a warrant authorizing the search of defendant's person. On March 20, defendant failed to appear before the grand jury. On that day, an order was issued requiring him to appear and to show cause why he should not be found in contempt of court. A bench warrant was also issued that day for his arrest. He was arrested four days later, and on March 27 he was found to be in contempt of court. Pursuant to ORS 33.020(1), the court imposed a $300 fine and sentenced defendant to 60 days in jail.

ORS 33.020(1) provides:

"Every court of justice and every judicial officer has power to punish contempt by fine or imprisonment, or both; but such fine shall not exceed $300 nor the imprisonment six months, except in the cases mentioned in subsection (2) of this section; and when the contempt is not one of those mentioned in ORS 33.010(1)(a) and (b), or in ORS 1.240(1), *it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby before the contempt can be punished otherwise than by a fine not exceeding $100.*" (Emphasis supplied.)

The statute limits the punishment for nondisruptive contempt to a $100 fine, unless the court finds an actual prejudicial effect, "specifically focused on the concrete situation in the particular proceeding." *State ex rel Spencer v. Howe,* 281 Or 599, 606, 576 P2d 4 (1978). The state contends that the

---

[1] ORS 30.010 provides, in part:

"(1) The following acts or omissions, in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

"* * * * *

"(j) Disobedience of a subpena duly served, or refusing to be sworn or answer as a witness."

prejudice in this case is twofold: defendant's failure to appear (1) caused the expenditure of time and resources in the search for defendant to execute the search warrant, and (2) deprived the state of defendant's testimony.

■■■■ The state explains that, as part of its investigation of a double murder, it obtained the search warrant in order to have an expert examine an apparent bite mark on defendant's hand. Defendant could not be located, and the state feared that, with the passage of time, the mark would lose its distinctive character. Because the state was aware that defendant had been subpoenaed to appear before the grand jury on March 20, it intended to execute the warrant when he appeared. The state contends that defendant's failure to appear caused it to expend additional law enforcement resources searching for him. We conclude that that kind of prejudice to the state does not constitute the kind of prejudice required to enhance the punishment under ORS 33.020(1). The purported prejudice is unrelated to the grand jury proceeding with respect to which defendant has been held in contempt; it arises from the state's not knowing defendant's whereabouts so that it could serve the search warrant on him. The prejudice contemplated by ORS 33.020(1) must be directly related to the proceeding for which the defendant has been held in contempt. *See State ex rel Spencer v. Howe, supra,* 281 Or at 606.

■ The state's second claimed prejudice is that it was deprived of defendant's testimony. This argument was not asserted at the trial court, and for that reason the record is devoid of any specific facts to support it. Consequently, we cannot say that the loss of defendant's testimony actually prejudiced the state. To hold otherwise would be to hold that every nonappearance prejudices a party's "right" to the testimony and is *ipso facto* contempt punishable by imprisonment. *See State ex rel Spencer v. Howe, supra,* 281 Or at 605. The statute requires a finding of *actual* prejudice.

The state contends that, even if defendant's actions caused prejudice, the statutory requirement that prejudice be shown in order to punish contempt by imprisonment and a fine in excess of $100 is an unconstitutional infringement on inherent judicial power to regulate the courts. In *State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 495-96, 407 P2d 250

(1966), the court held that ORS 33.020(1) is an unconstitutional restriction on a constitutionally created court. The court noted that "the legislature cannot take away a power which it does not give." 243 Or at 493. Only the Oregon Supreme Court is created by the constitution. It has never been held that the legislature cannot restrict a statutorily created court's contempt power. *See State v. Edwards,* 252 Or 325, 329, 449 P2d 448 (1969); *State v. Thompson,* 57 Or App 281, 288, 644 P2d 608 (Van Hoomissen, J., dissenting), *rev'd* 294 Or 528, 659 P2d 383 (1983).

■■ The court in *Lenske* went on to state that "it may follow that the legislature has the authority to limit the court's power to punish for contempt where the court is a creature of the legislature and not constitutionally established." 243 Or at 493. We conclude that it does follow. In the absence of a statutory restriction, statutorily created courts have the same powers as a constitutional court to punish for contempt but, because they are created by the legislature, the legislature may limit the courts' powers.[2] What the dissent says in praise of the role of the circuit court should, of course, be extended to all the courts in the judicial system. It has nothing to do, however, with the constitutional issue with which we are dealing. We conclude that ORS 33.020(1) is constitutional as applied to the circuit court.

Reversed and remanded for resentencing.

**ROSSMAN, J.,** dissenting.

Because I believe that the provision of ORS 30.020 which limits a circuit court's power to punish for an indirect contempt to a fine of $100 is an unconstitutional limitation of the court's inherent power to enforce its lawful orders, I would hold that the trial court did not err in fining defendant $300 for failing to appear before the grand jury as ordered. I would so hold regardless of whether defendant's failure to appear

---

[2] This conclusion is consistent with federal case law which has held that Congress may regulate the contempt power of the statutorily created federal courts. In *United States v. Fidanian,* 465 F2d 755 (5th Cir) *cert den* 409 US 1044 (1972), the court noted that, although the federal court's power to punish for contempt is an inherent power, it can be limited by Congress and that 18 USC § 401 has been found so to limit it. *See also United States v. Miller,* 588 F2d 1256, 1263 (9th Cir 1978).

prejudiced the state's case against him in the manner contemplated by ORS 30.020(1). Accordingly, I must respectfully dissent.

In *State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 495, 407 P2d 250 (1965), *cert den* 1966, the Oregon Supreme Court held that the provision of ORS 30.020 that limits a court's inherent power to punish for contempt is contrary to the constitutional principle of separation of powers under Article III, section 1, of the Oregon Constitution,[1] at least insofar as it applies to the Supreme Court. It quoted with approval *Ex Parte Robinson,* 86 US (19 Wall) 505, 510, 22 L Ed 205 (1873):

> " 'The power to punish for contempts is inherent in *all* courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice.' " 243 Or at 492. (Emphasis supplied.)

It then reasoned that "the legislature cannot unreasonably abridge or destroy the judicial power to punish for contempt because the legislature cannot take away a power which it did not give" and held that the provision of ORS 30.020 that limited its power to punish for contempt did just that. 243 Or at 495. I believe that the court's reasoning applies with equal force to the inherent powers of the circuit court.

In sounding a death knell for the doctrine of inherent judicial contempt power, the majority cites the *Lenske* court's qualifying statement that "[i]t may follow," nevertheless, that the legislature has the authority to limit a court's power to punish for contempt when "the court is a *creature of the legislature* and not constitutionally established." (Emphasis supplied.) The majority's reliance on that statement is misplaced for two reasons. First, there are certain powers inherent in the circuit courts that the legislature cannot curtail or abolish,

---

[1] Article III, section 1, of the Oregon Constitution, provides:

. ˙ "The powers of the Government shall be divided into three seperate [*sic*] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

because, regardless of origin, once a court of general jurisdiction has been established, its ability to function as a court of law within its jurisdiction may not be unduly burdened by another branch of government. Second, the circuit courts are not "creatures of the legislature."

In *State ex rel Ricco v. Biggs,* 198 Or 413, 255 P2d 1055 (1953), the court held that *circuit courts* possess the inherent power to provide an accused in a criminal case a fair and impartial trial and that that power could not be limited by legislative enactment. It quoted with approval the following passage from *Crocker v. Justices of Superior Court,* 208 Mass 162, 94 NE 369, 377 (1911):

> " 'Our system of government has created the executive, the legislative and the judicial, as three independent and co-ordinate departments, and in strong and comprehensive language has prohibited each from attempting to exercise the functions of either of the others "to the end that it may be a government of laws and not of men." *The courts of general jurisdiction* under such a Constitution *have the inherent power* to do whatever may be done under the general principles of jurisprudence to insure to the citizen *a fair trial,* whenever his life, liberty, property or character is at stake. The possession of such power involves its exercise as a duty whenever public or private interests require.' " 198 Or at 430. (Emphasis in original.)

Therefore, I do not see the issue as being whether the circuit courts possess inherent powers that may not be limited by statute. They obviously do. The question, rather, is whether the power to punish for contempt is one of the inherent powers of the circuit courts.

I cannot imagine a power more imperative to the effective functioning of the judicial system than the power of courts of general jurisdiction to impose meaningful sanctions for contempt in order to enforce lawful orders and judgments. *See State ex rel Oregon State Bar v. Lenske, supra,* 243 Or at 494 (quoting *State v. Greenwood,* 63 NM 156, 315 P2d 223 (1957)). As the one who presides over this state's court of general jurisdiction, a circuit judge is the primary protector of a great many individual rights. His or her decisions may have a more profound impact on our personal lives than those of any other government official. A circuit judge is the only judicial officer empowered to sentence a person to confinement in

the penitentiary or a correctional institution or to commit involuntarily the mentally ill. Only a circuit judge can terminate a marriage, award custody of children or adjudicate parental rights. A circuit judge has exclusive responsibility to preside over this state's juvenile courts and to decide the fate of young people involved in delinquency or dependency matters. He or she is solely vested with the power to approve or disapprove adoptions, to resolve the title to real property and to decide what happens to one's property—real or personal—upon death or incapacity. Circuit judges preside over all civil lawsuits when the amount in dispute exceeds $10,000. Additionally, he or she performs a myriad of administrative tasks, including instructing of and overseeing the work of the local grand jury, pursuant to ORS chapter 132.

It is imperative to the effective administration of justice that circuit court orders and decrees, with respect to these and other functions be obeyed. I believe that a circuit court judge possesses the inherent power to see that they are. Because the power of contempt is the most effective means available to the court for the enforcement of its orders and judgments, it is essential to the orderly administration of justice.[2] Without it, a circuit court would be like a schooner attempting an ocean voyage without sails.

The doctrine of separation of powers requires that the court's powers of contempt remain inviolate. As in *State ex rel Oregon State Bar v. Lenske, supra,* we need not decide whether ORS 30.020(1) is unconstitutional as it applies to courts such as the Court of Appeals, which are created by the legislature. The circuit courts find their origin in Article VII (original), section 1, of the Oregon Constitution, which provides:

"The Judicial power of the State shall be vested in a Suprume [*sic*] Court, Circuits [*sic*] Courts, and County Courts, which shall be Courts of Record having general jurisdiction, to be defined, limited, and regulated by law in accordance with this constitution."

Although, as noted, Article VII (amended), section 1, provides

---

[2] As noted in *Lenske,* because of inflation the $100 limit of ORS 30.020 constitutes, at least in this day and age, much more than a procedural limitation on a court's power to punish for contempt.

for a Supreme Court and other courts as from time to time may be created by law,[3] Article VII (amended), section 2, provides:

> "The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law."

Under section 2, the legislature may be empowered to abolish the circuit courts in their entirety and establish a new court of general jurisdiction that would be a "creature of the legislature." However, it has not done so. In short, the legislature neither created the circuit courts nor provided them the power to punish for contempt. As the Supreme Court noted in *State ex rel Oregon State Bar v. Lenske, supra,* it cannot take away a power which it did not give. Because ORS 30.020(1) unduly burdens the circuit courts' ability to exercise that power, I would hold it unconstitutional.

We should not reverse the circuit court.

---

[3] Article VII (amended), section 1, provides:

"The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law."