In the Matter of Leonard Arnold, Alleged to be a
Mentally Ill Person.
STATE OF OREGON, *Respondent,*
*v.*
LEONARD ARNOLD, *Appellant.*
(No. 2534, CA 10334)
586 P2d 93

Timothy M. Bowman, Coos County Public Defender, North Bend, argued the cause and filed the brief for appellant.

Gregory A. Parker, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

ROBERTS, J.

## ROBERTS, J.

■■ Appellant seeks reversal of an order declaring him to be a mentally ill person and committing him to the custody of the Oregon Mental Health Division. Two assignments of error are raised. The procedural issue we do not reach. We consider only the second assignment of error in which appellant contends the evidence does not establish that he is mentally ill beyond a reasonable doubt because it is insufficient to prove that he is dangerous to himself or others as required by ORS 426.005(2).[1] The trial court found no evidence that appellant was dangerous to others, but did find him dangerous to himself and unable to care for himself. We review de novo, *State v. O'Neill,* 274 Or 59, 545 P2d 97 (1976).

Appellant, a 29-year-old male, was described variously as "suspicious," "confused," and "disoriented in his thinking and judgment." Appellant's mother, an initiating petitioner, testified that appellant heard voices, feared animals, feared living alone and drank to excess. She stated that she no longer wished appellant to live in her house, but knew of no one who would take him in.

Appellant testified that his drinking problem was now under control, that he was not afraid to live alone and was interested in finding an apartment. Appellant, who has received psychiatric care at Dammasch and the Veteran's Administration Hospital in the past, expressed a willingness to undergo voluntary treatment.

The only violent act attributable to appellant was an act of violence against property. His mother testified that he had entered her home, which was his

---

[1] ORS 426.005(2) provides:

"(2) 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a) Dangerous to himself or others; or

"(b) Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety."

[ 871 ]

residence at the time, by breaking a window. The incident, as recounted by appellant and his mother, occurred when she purposely locked him out of the house in order to prevent his return. Finding the door locked and being unable to arouse his mother from sleep, appellant broke the window in order to escape a very wet and cold night.

The other specific behavior alluded to by the court was an unannounced entry by appellant into a neighbor's apartment. Appellant testified that he knocked on the door and entered when he thought he heard someone invite him in. Once inside, appellant waited quietly for the person who lived there to come into the living room, but in fact, there was no one in the apartment. A few minutes later the owner arrived and was upset that appellant was in the living room. The trial court observed that "[a] man who enters somebody else's apartment is apt to have his head blown off," and concluded that appellant is therefore dangerous to himself.

The only evidence of appellant's behavior came from appellant himself or his mother. Although the mother initiated the commitment procedure, she testified that appellant can take care of himself. As for the two incidents set out above and upon which the court relied, we find from appellant's explanation that it was, at most, only unusual behavior.

The only other evidence is the reports of the two medical examiners. The reports were prepared on standard forms and contained the following information. The italicized matter is the questions propounded in the form.

Dr. Swenson's Report:
"(1) *Presenting Problem:*
Irresponsible behavior. (Breaking windows)
Rambling speech.
Unable to care for himself.

"(2) *Mental and Emotional Status:*
Depression.
Irresponsible.
"(3) *Physical Condition* (physicians only):
Appears rather pale tired and unkempt.
"(4) *Diagnosis* (physicians only) *and Problem List:*
Mentally ill.
"(5) *Need for Treatment:*
Yes.
"(6) *Conclusions:* Based upon the findings hereinabove set forth, I

(X) do  ( ) do not    find that the person has a mental disorder, and

(X) is  ( ) is not    dangerous to self and/or others, or

( ) is  (X) is not    able to provide for his basic personal needs and is not now receiving such care as is necessary for his health or safety.

"(7) *Recommendation:* If mentally ill, specify type of treatment facility best calculated to help the person recover from his mental illness.
Needs custodial care."

## Dr. Munroe's Report:

"(1) *Presenting Problem:*
Delusioned statements.
"(2) *Mental and Emotional Status:*
Confused — Fears —
"(3) *Physical Condition* (physicians only):
Has varied complaints.
"(4) *Diagnosis* (physicians only) *and Problem List:*
Mentally abnormal.
"(5) *Need for Treatment:*
Yes.
"(6) *Conclusions:* Based upon the findings herein set forth, I

(X) do  ( ) do not    find that the person has a mental disorder, and

(X) is  ( ) is not    dangerous to self and or others, or

( ) is   (X) is not   able to provide for his basic personal needs and is not now receiving such care as is necessary for his health or safety.

"(7) *Recommendation:*   If mentally ill, specify type of treatment facility best calculated to help the person recover from his mental illness.

Advise continual custodial care under a guardianship arrangement and under mental supervision for counseling and medication.

"It is my opinion that this person ( ) would ( ) would not cooperate with and benefit from a program of voluntary treatment."

Dr. Swenson's report tells us only that the appellant suffers from "depression" and is "irresponsible," and that from this he concludes appellant is mentally ill, a danger to himself or others and unable to provide for his personal needs. Dr. Munroe describes a different mental and emotional state, *i.e.,* "confused — fears," but reaches the same conclusions. Conceding the appellant may have some mental problems, there is no indication showing on what basis the physicians reached the conclusion the appellant was a danger to himself or others and could not care for himself. The evidence of the appellant's observed behavior belies their conclusions. Unlike *State v. Troupe,* 36 Or App 875, 586 P2d 95 (1978), the nexus between the evidence and the experts' conclusions is not apparent. A more detailed statement of the experts' reasons is necessary if we are to be persuaded beyond a reasonable doubt.

Reversed.