Submitted on record and brief August 22,
reversed September 29, 1980

In the Matter of David E. Jepson
alleged to be a mentally ill person.

STATE OF OREGON,
*Respondent,*

*v.*

DAVID E. JEPSON,
*Appellant.*

(No. M622, CA 17344)

617 P2d 284

Sally L. Avera, and Avera and Avera, Dallas, filed the brief for appellant.

No appearance for respondent.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

RICHARDSON, P.J.

### RICHARDSON, P.J.

Petitioner appeals his involuntary commitment ordered pursuant to ORS 426.130(3).[1] The sole question on appeal is whether there was clear and convincing evidence[2] to support the court's decision that he was a mentally ill person as defined in ORS 426.005(2). We review *de novo*,[3] and reverse.

ORS 426.005 provides:

"As used in ORS 426.005 to 426.390, unless the context requires otherwise:

"* * * * *

"(2) 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a) Dangerous to himself or others; or

"(b) Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety.

"* * * * *."

■    To satisfy the statutory requirements, a mental disorder must first be established. *State v. Alexander,* 26 Or App 943, 554 P2d 524 (1976). Petitioner's mother and brother testified that he had experienced delusional episodes between January and March, 1980. Petitioner denied the existence of the delusions. There was evidence they had ceased about two weeks

---

[1] ORS 426.130 provides:

"After hearing all of the evidence, and reviewing the findings of the examining persons, the court shall determine whether the person is mentally ill. If in the opinion of the court the person is not mentally ill, he shall be discharged forthwith. If, based upon clear and convincing evidence, it is the opinion of the court that the person is mentaly ill, the court may order as follows:

"* * * * *

"(3) If in the opinion of the court voluntary treatment or conditional release is not in the best interest of the mentally ill person, the court may order the commitment of the individual to the division for treatment. The commitment shall be for a period of time not to exceed 180 days."

[2] In *State v. Sterzicg,* 47 Or App 621, 614 P2d 631 (1980), we noted that the 1979 legislative change in the standard of proof in commitment cases requires that there must be a high probability the evidence satisfies ORS 426.005.

[3] ORS 426.060(1); *State v. O'Neill,* 274 Or 59, 545 P2d 97 (1976); *State v. Nesbitt,* 23 Or App 202, 541 P2d 1055 (1975), *rev den* (1976).

prior to the hearing date. At the hearing, petitioner expressed some confusion regarding the nature and purpose of the proceedings but was otherwise oriented and generally responsive to the questions presented. Other evidence showed petitioner displayed exaggerated concerns over political affairs. He expressed desires to go to Washington, D.C., to "get things fixed." There was testimony that he was uncooperative toward Mental Health personnel and reluctant to accept any voluntary treatment. He also had become despondent and stopped making efforts to gain employment. Petitioner had no prior history of mental illness and had been independent and self sufficient for a substantial number of years.

The written evaluations by the professional examiners are sparse. One expert, Dr. Willey, stated petitioner suffered from a "psychosis." The other, Dr. Sweet, gave no basis to support his conclusion that petitioner suffered from a mental disorder.[4] The examiners' oral statements offer little more. The following excerpt is illustrative:

"THE COURT: Dr. Willey and Dr. Sweet, what is your opinion here?

"DR. SWEET: Based on the evidence and the investigation, it's my opinion that he *probably is suffering* from a mental illness. And I haven't gotten any indication yet — he's been dangerous to himself or other people, but I also have not gotten any information that he'd be able to care for his own basic needs, so on those two — I would say unable to care for his own basic needs.

"DR. WILLEY: I feel he is mentally ill, and I'm not convinced he wouldn't harm somebody else if he is willing to go with us this far today, but at least his basic needs I would agree with Dr. Sweet. I think at least he needs more interviewing to determine —

"THE COURT: I agree with that, so we'll commit him to the state hospital." (Emphasis added.)

---

[4] There was also a one page report from the Oregon State Hospital which noted that petitioner had "[n]o Problem in management — Marked denial — Poor insight — Overt Psychotic Process not elicited on induction. More likely a latent [psychotic] or Borderline Personality." No one appeared from the hospital at the hearing to explain these remarks, and the explanation by Dr. Willey offered little additional insight.

In *State v. Alexander, supra,* we addressed the necessity for medical examiners to provide adequate findings and conclusions to support their recommendations regarding commitment. We noted:

"* * * What is needed, then, is for the professional examiners to fully explain the facts and observations that led them to a conclusion. A statement by the examining doctors, as in the instant case for example, that the person has a 'flat' appearance is meaningless without explanation. And, if the examiner merely states a conclusion that the person being tested is dangerous to himself or others, it is not adequate. The basis of that conclusion must be supported by facts supporting the conclusion.

"* * * * *

"* * * The examiners must detail the basis for their findings. It is again emphasized that it is not enough to say that an individual is probably schizophrenic. In addition, the reasons for that judgment must be supplied. Further, the actual and possible effects of the mental illness should be catalogued, with specific reference to the individual at hand." 26 Or App at 947-48.

■ The evidence provided by the examining witnesses in this case does not meet this standard. To state that an individual is "probably" suffering from a mental illness or is "mentally ill" because he suffers from "psychosis," without further support or explanation, is simply not sufficient evidence upon which to base an order of involuntary commitment. *State v. Arnold,* 36 Or App 869, 586 P2d 93 (1978); *State v. Alexander, supra.*

In addition to evidence of a mental disorder, ORS 426.005(2) requires clear and convincing evidence that as a result of the disorder, the individual is either a danger to himself or others or unable to provide for his basic personal needs. ORS 426.005(2); ORS 426.130; *State v. Allmendinger,* 36 Or App 381, 584 P2d 773 (1978); *State v. Lucas,* 31 Or App 947, 951, 571 P2d 1275 (1977).

The primary evidence to support a conclusion concerning petitioner's dangerousness were his state-

ments about "getting things fixed" in Washington, D.C. When questioned at the hearing, he claimed no desire or ability to carry out his concerns.

His statements were ambiguous and susceptible to many interpretations. Petitioner was not assaultive or at any time threatening to those around him. He denied ever contemplating self inflicted injury and there is no evidence to refute his statement. His mother testified that he became agitated and excited but never threatened her.

The examiners reached different results. Dr. Sweet concluded petitioner was neither dangerous to himself nor others. Dr. Willey stated, in somewhat unclear and imprecise terms, that petitioner was dangerous to others but not himself.

■■ Past verbal acts, while probative, must be supported by evidence that they clearly form a foundation for predicting future dangerousness. *State v. Nelson,* 35 Or App 57, 580 P2d 590 (1978); *State v. Lucas, supra.* Neither the testimony nor the conclusion reached by the examiners statisfy this requirement. *State v. Barker,* 42 Or App 563, 600 P2d 958 (1979); *State v. Fry,* 36 Or App 297, 584 P2d 354 (1978).

■ With regard to petitioner's ability to care for his basic personal needs, the evidence is equally scant. Both professional examiners reached the conclusion petitioner was unable to meet his basic needs. Though the court's findings are unclear, this appears to be the specific basis for petitioner's commitment. A finding that an individual is unable to provide for his basic needs must be accompanied by the additional finding that such an inability is due to the claimed mental disorder. *State v. Phyll,* 36 Or App 627, 585 P2d 48 (1978); *State v. Stephens,* 23 Or App 257, 541 P2d 1052 (1975).

Petitioner lived independently and maintained employment for some six years prior to his return to Oregon in January, 1980. The evidence showed he took care of himself, was clean and able to feed himself. The only testimony to support the court's

finding was petitioner's admission that if he was released, he was unsure of where he would go. At the hearing he stated:

"DR. SWEET: What kind of plans do you have for yourself?

"MR. D. JEPSEN: Planning on leaving.

"DR. SWEET: Where are you going to go?

"MR. D. JEPSEN: I'm not sure yet.

"DR. SWEET: Okay. If this case were to be dismissed and you were allowed to leave today, where would you go?

"MR. D. JEPSEN: I'm not sure.

"DR. SWEET: Could you return home to your mother's place?

"MR. D. JEPSEN: Well, probably better off if I didn't.

"DR. SWEET: Do you have any money to go anywhere?

"MR. D. JEPSEN: No, no money at all.

■     No evidence was introduced to establish that any inability by petitioner to provide for his needs was related to any mental disorder. The evidence showed that he had been unemployed for some time and was without any present means of financial support. He had evidently stopped looking for employment. He testified he was despondent over his lack of money and his inability to secure unemployment benefits or new employment. His situation was as reasonably the result of his lack of financial resources as anything. There was insufficient evidence of any nexus between the diagnosed mental disorder and any inability of petitioner to care for himself. The state did not meet its burden of proof. *State v. Phyll, supra; State v. Heintz,* 26 Or App 935, 554 P2d 556 (1976).

Reversed.