Argued and submitted June 10, reversed August 24, 1981

In the Matter of Kevan Edward Howell,
alleged to be a mentally ill person.

## STATE OF OREGON,
*Respondent,*

*v.*

## KEVAN EDWARD HOWELL,
*Appellant.*

(No. 81-12, CA A20151)

633 P2d 14

David G. Terry, Roseburg, argued the cause and filed the brief for appellant.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

**ROBERTS, J.**

This is an appeal from an order declaring petitioner to be a mentally ill person and committing him to the custody of the Oregon Mental Health Division. Petitioner assigns as errors the finding by the trial court that he is a mentally ill person as defined in ORS 426.005(2)[1] and the finding that he was not willing and able to participate in treatment on a voluntary basis as described in ORS 426.130(1).[2] In our *de novo* review, *State v. O'Neill,* 274 Or 59, 545 P2d 97 (1976), we conclude the evidence is insufficient to establish that petitioner is a mentally ill person.

The notice of mental illness which was signed by petitioner's mother and sister alleges that petitioner "is dangerous to himself and others" for the reason that "[he] walked into a State office building and began going through the papers in the file cabinets and use [sic] the phone. He had no permission to do so."

One of the examiners was a medical doctor who is licensed to practice medicine and surgery and the other examiner was a mental health professional recommended by the Mental Health Division to examine persons alleged to be mentally ill. Both examiners concluded petitioner has a mental disorder and is not able to provide for his basic personal needs and is not now receiving such care as is necessary for his health and safety. The examiners differed, however, on whether petitioner is "dangerous to himself or others," one concluding that he is and the other that he is not.

Petitioner is 27 years old; he graduated from high school and has 90 hours of community college credits.

---

[1] ORS 426.005(2) provides:

" 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a) Dangerous to himself or others; or

"(b) Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety."

[2] ORS 426.130(1) provides:

"If the mentally ill person is willing and able to participate in treatment on a voluntary basis, and the court finds that he will probably do so, the court shall order the release of the individual and dismiss the case."

Petitioner has been committed on previous occasions[3] and has had "mental or emotional" problems since the age of twelve. As to the incident in the state employment office, petitioner testified that he had worked in that office six years before doing charity work and that he had wanted to put a telephone number or address in an index. He apparently believed the office was still being used for the same purpose as when he worked there. Petitioner's mother works at the office, and when she told him he should not be going through the files and using the phone he left the office.

Petitioner is a church member and is obviously zealous in his religious beliefs. He used language during the hearing that is ordinarily only used in religious communications and which was inappropriate for the occasion. At one point he took a Bible from his pocket and read briefly from it. The family difficulties about which petitioner, his mother and sister all testified have arisen partially from petitioner's religious beliefs, that is, his attempts to impose certain behavior on his family in the name of religion. For example, petitioner's mother testified, "[H]e related to me that if I didn't do as he wished me to do, and [his sister] also, that we wouldn't live through the day. Now, he wasn't threatening me with physical harm from him. The Lord was going to strike me dead." The pertinent excerpts from the transcript are set out in the margin.[4]

---

[3] Petitioner said he had been committed twice and that he had been in both the State Hospital and the Veterans' Hospital. The court asked him if he had been hospitalized more than those two times and he replied "yes," however, it is unclear whether that answer meant he had been hospitalized on other occasions for mental illness or for physical reasons.

[4] "[Physician]: Do you feel that he has any special religious ideas?

"[Mother]: He has related to my minister and myself that he doesn't believe that his body can be destroyed, and that he can't be hurt physically.

"[Physician]: What do you mean by that?

"[Petitioner]: When you are with good family and friends, that situation can't happen, you are not persecuted.

"[Physician]: Do you feel you are persecuted?

"[Petitioner]: No.

"THE COURT: Has he ever offered any violence to you or made any threats of any physical violence?

"[Mother]: Not this particular time. There was another time when he took a swing at me and didn't exactly miss, but (pause) —

"THE COURT: As far as you know has he ever attempted to inflict any violence on anybody else or actually done it?

"[Mother]: Other than just shouting and screaming and pushing, no. No, I truthfully don't believe that he's going to kill me or anything like that.

"THE COURT: You don't have any physical fear of him?

"[Mother]: Not, not really.

"THE COURT: Is he able to feed and clothe himself and eat and all that stuff, take care of himself physically?

"[Mother]: He's not able to support himself, no.

"THE COURT: I don't mean that.

"[Mother]: You mean mix a meal and take a bath himself?

"THE COURT: Yes.

"[Mother]: That he can do.

"THE COURT: Bathe, shave, eat?

"[Mother]: At this point, yes.

"THE COURT: You say here he's a danger to himself and others but you apparently do not mean that literally?

"[Mother]: No. What I'm saying is that he believes that his body cannot be damaged and he walks out in the street in front of a car he's going to get damaged and maybe the people in the car will be.

"THE COURT: Do you think he's ever done that? Do you have any reason to believe he's ever done that?

"[Mother]: No, I have never seen him do it but I believe it could happen.

"THE COURT: I interpret his invincibility, if you will, a little differently than you do. I don't understand him to be saying that. Maybe I should ask him.

"Do you believe your body is incapable of being injured or destroyed?

"[Petitioner]: I believe that God gives life.

"THE COURT: In that sense do you think you can be physically injured?

"[Petitioner]: I have been, yes.

"THE COURT: You don't have any doubt about that?

"[Petitioner]: No doubt.

"[Petitioner's counsel]: Were you speaking symbolically?

"[Petitioner]: I was speaking symbolically.

"[Physician]: But you do believe that you could be injured in the future?

"[Petitioner]: Hopefully not.

"[Physician]: Do you believe you could be injured?

"[Petitioner]: Yes.

The only other evidence of significance is on the question of whether petitioner is able to care for himself. He had worked as a salesman for a Shell Oil Company products distributor at Biggs Junction. He had been receiving unemployment compensation while remaining in that area and had reapplied for unemployment compensation after returning to his home in Roseburg. He testified that he expected to receive unemployment benefits again. His mother, however, testified that petitioner had received notice that he would not receive any further unemployment compensation. At the time of the hearing petitioner was living at a "mission" which apparently provides for persons needing a temporary place to stay. Petitioner's mother said it was too disruptive for petitioner to stay at her home.

■    We conclude that the evidence in this record is inadequate to support a commitment. The only evidence as to whether petitioner is a danger to himself is that set out above from the transcript; it does not support a finding that he is a danger to himself. The only evidence, other than that already related, that petitioner is a danger to others is his sister's testimony that petitioner shook his fist at her and told her God had told him that she should find work elsewhere. The mother also testified that petitioner physically picked her up and put her on the porch and told her that God did not want her to garden that day. It appears from the transcript that the mother had with her notes her son had written to her. Apparently, the trial court examined those notes but they were not admitted into evidence and we do not know what they contained.

The physician examiner diagnosed petitioner's condition as "schizophrenia, paranoid." We said in *State v. Jepson,* 48 Or App 411, 617 P2d 284 (1980):

"In addition to evidence of a mental disorder, ORS 426.005(2) requires clear and convincing evidence that as a

"[Physician]: Okay.

"THE COURT: Put it literally, do you think you could walk right out onto a busy highway and not be hit?

"[Petitioner]: I wouldn't walk out onto a busy highway.

"[Petitioner's counsel]: If you were to do that and you were struck by a car presumably you would be done physical harm; is that correct?

"[Petitioner]: Yes."

result of the disorder, the individual is either a danger to himself or others or unable to provide for his basic personal needs. ORS 426.005(2); ORS 426.130; *State v. Allmendinger,* 36 Or App 381, 584 P2d 773 (1978); *State v. Lucas,* 31 Or App 947, 951, 571 P2d 1275 (1977)." 48 Or App at 415.

Clear and convincing evidence is "evidence that is of 'extraordinary persuasiveness.'" *Pantano v. Obbiso,* 283 Or 83, 87, 580 P2d 1026 (1978). Because we are not persuaded that the evidence presented proves petitioner is dangerous to himself or others or that he is unable to provide for his basic personal needs, we reverse the trial court.

Reversed.