Argued and submitted April 30, affirmed November 28, 1984

In the Matter of Jerry Smith,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

JERRY SMITH,
*Appellant.*

(M83-16; CA A30112)

692 P2d 120

Sheldon H. Rich, Astoria, argued the cause and filed the brief for appellant.

Roy Pulvers, Assistant Attorney General, Salem, argued

the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

This is an involuntary commitment proceeding. Appellant seeks reversal of an order of the circuit court which found him to be mentally ill and committed him to the Mental Health Division for 180 days.[1]

Appellant contends, first, that the notification of mental illness and report of pre-commitment investigation should have been dismissed because it was not based on probable cause, and, second, that the circuit court's finding that appellant was mentally ill was not supported by the evidence. Although these two assignments of error are stated separately, they both present the same basic issue: whether appellant's condition, which is acute and chronic alcoholism, constitutes a mental disorder within the definition of a mentally ill person in ORS 426.005(2).[2] We hold that it does and affirm.

In order to secure a commitment order, the state must establish mental illness by clear and convincing evidence. ORS 426.130; *State v. Jepson*, 48 Or App 411, 617 P2d 284 (1980). A mentally ill person is defined by ORS 426.005(2):

" 'Mentally ill person' means a person who, because of a mental disorder, is either:

"(a) Dangerous to himself or others; or

"(b) Unable to provide for his basic personal needs and is not receiving such care as is necessary for his health or safety."

In order to establish that a person is mentally ill, the state first must establish that the person suffers from a mental disorder. A finding of either dangerousness or inability to provide for one's basic needs, without a finding of mental disorder, is insufficient to justify commitment. *State v. Jepson, supra,* 48 Or App at 413.

---

[1] Appellant was actually discharged on October 31, 1983, 13 days after he was committed. We have previously held that a release in a mental commitment case does not render the appeal moot. *State v. Van Tassel*, 5 Or App 376, 484 P2d 1117 (1971).

[2] We note that commitment to the Mental Health Division does not necessarily result in placement in a state mental hospital. The division has the authority to place a person committed to its care in "a state mental hospital, community hospital, residential facility, detoxification center, day treatment facility, or such other facility as the Mental Health Division determines suitable * * *." ORS 426.005(3).

Mental disorder is not defined by the statute, nor is it clarified by the legislative history of ORS 426.005. However, some indication of the legislature's intent can be discerned from the legislative history of Oregon Laws 1975, chapter 690, which changed the laws relating to mentally ill persons in various ways. The bill repealed ORS 426.410, which had provided for the commitment of "addicts" to a state hospital for the mentally ill. Dr. Delbert M. Kole, the assistant administrator of the Mental Health Division, presented written testimony describing the bill which included the following statement:

> "Separate reference to civil commitment of drug addicts would be repealed. Drug addicts can be civilly committed under the general commitment statutes, with the same criteria for commitment as with other mental disorders." Exhibit A, Senate Committee on Judiciary, Senate Bill 75, January 22, 1975.

In response to a question concerning the bill's provision for transfer of patients between facilities, Dr. Kole testified:

> "SENATOR E. BROWNE: What is the transfer between facilities? That includes Fairview?
>
> "DR. KOLE: No. It does not include mental retardation. It might include drug and alcohol cases if they meet the other criteria.
>
> "SENATOR E. BROWNE: Are the drug treatment programs under your jurisdiction?
>
> "DR. KOLE said yes, if a drug addict meets the other criteria, but that is rare. But, if it was the case, they could be assigned to a drug treatment program." Minutes, Senate Committee on Judiciary, Senate Bill 75, January 22, 1975.

Finally, in response to a question concerning the bill's provision extending the permissible period of detention before a hearing, Dr. Kole's testimony was paraphrased as follows:

> "Some people in a hospital, especially alcohol and drug problems, in three, four, five days, recover a good deal and by hearing time may not be committed. If the detention's extended a few days longer, probably a few more of those people won't need to be committed." Minutes, Senate Committee on Judiciary, Senate Bill 75, January 22, 1975.

These references in the legislative history, although

somewhat cursory, indicate the legislature's intention that drug addicts and alcoholics could be committed under ORS 426.005 if they meet the other criteria of the statute.

■ Another indication of legislative intent is the fact that the Mental Health Division is specifically authorized to send a patient committed to its care to a detoxification center. ORS 426.005(3); 426.060(2). A detoxification center is defined as a facility "that provides emergency care or treatment for alcoholics or drug-dependent persons." ORS 430.306(4).[3] The obvious conclusion, therefore, is that the legislature anticipated that the mental disorder from which some of those committed suffered would be alcoholism and drug addiction.

■ ■ Appellant argues that this interpretation of the statute is countered by the statutory scheme contained in ORS 430.260 *et seq,* relating to treatment of alcoholism and drug dependency.[4] This portion of the code defines "alcoholic," concludes that alcoholism is an illness and prohibits local political subdivisions from adopting or enforcing any laws or regulations which make public intoxication and certain other things which would might follow from the fact of alcoholism a crime. These statutory provisions followed the Supreme Court's mandate in *Robinson v. California,* 370 US 660, 82 S Ct 1417, 8 L Ed 2d 758 (1962), in which it held that it was cruel and unusual punishment to make it a crime to be

[3] Although this definition of a detoxification center is not specifically made applicable to the definitions of ORS 426.005, it does show that the legislature was aware of the general definition of a detoxification center.

[4] Although not argued by appellant, we note that an argument could be made that there is a specific statute dealing with drug and alcohol addiction, ORS 426.450, which provides for the temporary commitment (48 hours) of alcoholics and, therefore, that the legislature could not have meant to include them in the more general statute. However, we would reject such a contention. The legislative scheme contained in ORS 426.450 to 426.470 requires that treatment facilities be available for alcoholics who voluntarily admit themselves for such treatment. The statute also provides that any person who is found to be intoxicated in a public place may be sent to a treatment facility and, if the person is in immediate danger or is a danger to himself or to others, he or she may be taken to an appropriate treatment facility and held for up to 48 hours. The purpose of ORS 426.450 to 426.470 is to allow alcoholics to seek voluntary treatment and to provide some means by which police, who have been barred by other provisions of the statute from arresting alcoholics merely for being drunk on the street, can get them off the street. There is nothing in this legislative scheme that deals with the alcoholic who does not voluntarily commit himself and is not found in a public place, but who, through his alcoholism, becomes a danger to himself or to others or is unable to provide for his basic personal needs. The statutes, therefore, do not overlap and are consistent with each other.

addicted to the use of narcotics, and to *Powell v. Texas,* 392 US 514, 88 S Ct 2145, 20 L Ed 2d 1254 (1968), which held that the same rationale applies to alcoholics but does not bar states from criminal prosecution for public intoxication. The mental commitment statute, ORS 426.005(2), which is involved in this case, was intended by the legislature to address different issues and needs than those addressed by ORS 430.260 *et seq.* Therefore, the fact that the definition of alcoholic in this portion of the statute does not specify that alcoholism is a mental disorder carries no implication that the legislature intended to eliminate alcoholics from the definition of mental disorder under the commitment statute.[5]

■ We hold that the legislature, in adopting ORS 426.005 *et seq,* intended to provide for the commitment of chronic alcoholics if they meet the additional requirements of ORS 426.005(2)(a) and (b), in that they are a danger to themselves or to others or are unable to provide for their own basic needs.

This conclusion that alcoholism is a mental disorder is consistent with an implication in a previous case. In *State v. LeHuquet,* 54 Or App 895, 636 P2d 467 (1981), we assumed without stating that the defendant's chronic alcoholism constituted a mental disorder and decided the case solely on the issue of whether the state had established his dangerousness to himself or others.

Our ruling is also consistent with the conclusions which have been reached by the authorities in this country on mental illness and by courts in other jurisdictions. In *Granville House v. Dept. of Health & Human Serv.,* 715 F2d 1292, 1295, 1302 (8th Cir 1983), the court noted that both the World Health Organization's International Classification of Diseases (known as "ICD") and the American Psychiatric Association's "The Diagnostic and Statistical Manual of Mental Disorders" (known as "DSM-III"), classify alcoholism as a mental disorder. *See also Hays v. Finch,* 306 F Supp 115 (WD

---

[5] Indeed, although the definition of alcoholism as a mental disorder under the commitment statutes might appear to have some facial relevance to other aspects of the law, we specifically note that our decision in this case does not affect the issue of whether alcoholism can constitute a mental illness to avoid responsibility under the criminal statutes.

Pa 1969); *State ex rel Allen v. Radack,* 246 NW2d 661 (SD 1976).

Finally, this holding is consistent with the testimony which was before the trial court. Carolyn Neve, a "qualified mental health professional recommended by the Mental Health Division" examined appellant pursuant to ORS 426.110. She stated that appellant was a chronic alcoholic and had a mental disorder.

 Having concluded that chronic alcoholism is a mental disorder within the meaning of ORS 426.005, we now turn to the facts of this case to determine whether the trial judge was correct in holding that the notification of mental illness was supported by probable cause, that the state met its burden of proving by clear and convincing evidence at the hearing that appellant suffered from chronic alcoholism and that such alcoholism made him a danger to himself or others or made him unable to provide for his basic personal needs.

ORS 426.070(3) states, in pertinent part:

> "If the court, following the investigation, concludes that there is probable cause to believe that the person investigated is a mentally ill person, it shall, through the issuance of a citation as provided in ORS 426.090, cause the person to be brought before it at a time and place as it may direct, for a hearing to determine whether the person is mentally ill. * * *"

The term probable cause is not defined in ORS chapter 426. We hold that, by analogy to ORS 131.005(11),[6] it may be defined as a substantial objective basis for believing that more likely than not a person is mentally ill. In this case, the Pre-commitment Investigation Report stated that appellant was a chronic alcoholic, establishing the mental disorder element. The report further alleged that he

> "had torn up the house just prior to being interviewed. He has been physically abusive to both his father and son.[7] He

---

[6] ORS 131.005(11) provides:

"'Probable cause' means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."

[7] Apparently appellant does not have a son, and this reference is actually to his brother.

will not be allowed to live anymore in his father's home and it is doubtful if he can care for himself."

The Notification of Mental Illness included statements from his father that appellant

"strikes me with a club. Pushes me when angry and I'm on crutches. Hides my crutches. Breaks furniture when drunk and is totally irresponsible — behavior — violent — is unpredictable.

"* * * * *

"Gets mad and strikes other persons with little or no provocation. Never or seldom takes baths, washes, etc. * * * Arrested numerous times by state police."

These documents together established probable cause to believe that appellant was mentally ill and justified a commitment hearing.

■■ ■■ We review the circuit court's finding of mental illness *de novo*.[8] The fact that appellant's alcoholism is causing his brain and body to deteriorate is insufficient in and of itself to justify a finding of mental illness. *State v. LeHuquet, supra,* 54 Or App at 896. Evidence of " 'impaired thinking,' 'false beliefs' or 'grand delusions'" alone is also insufficient. *State v. LeHuquet, supra,* 54 Or App at 896. ORS 426.005(2). The state must go further and establish by clear and convincing evidence that appellant is a danger to himself or to others.[9] Appellant is a deaf mute, who has been a chronic alcoholic for the last 15 or 20 years. During that period of time, he has lived with his parents, who as of the time of the hearing were no longer willing to care for him. Appellant's father had filed for a restraining order under the Abuse Prevention Act, ORS 107.700 *et seq,* putting appellant out of the family home. His father testified:

"I was able to work, and when I was about 80 years old he put me on these crutches; he knocked me down. He hits you all

---

[8] We cannot ignore the fact that, in a mental illness case, the circuit court's opportunity to view appellant's demeanor may be critical in reaching a conclusion as to his mental state. Therefore, we do give some deference to the conclusion of the circuit court. In this case, even without such deference, we would affirm the circuit court, because the evidence of mental illness on the record before us is clear and convincing.

[9] No attempt was made to justify the commitment on the ground that appellant was unable to provide for his basic needs.

the time. That's the first thing he thinks about is fighting all the time. And he's always completely drunk. And he will steal his wine even out of grocery stores * * *.

"* * * * *

"He tears stuff up in the house, breaks stuff; he goes completely out of his mind, and as soon as Jimmy [appellant's brother] gets home from work, the first thing he wants to do is fight him, and he'll come to me and say, 'Jimmy mad; Jimmy mad;'.[10]

"* * * * *

"He won't do nothing. All he does is just get drunk and sits in a chair. He watches TV, goes to sleep; he gets up at 12:00 o'clock in the day, and that's it. And then he sits out in the front room and goes to sleep and then he's up all night raising hell. He does everything to trip me."

Appellant's father further testified that appellant was never sober at home for more than an hour. He has fallen down drunk in the middle of the highway. He picks fights with his father's customers and throws firecrackers and rocks at cars. He has never received any treatment for his alcoholism.

Appellant was examined by two medical examiners at the hearing. Dr. Kettelkamp concluded that appellant had acute chronic ethanolosis with aggressive, destructive behavior to himself and others. Kettelkamp did not find appellant to have a mental disorder, but did find that he is dangerous to himself and to others. He concluded: "He needs structured treatment and care as he would not be able to get this on outpatient basis. He would not continue with this type of program." Dr. Neve concluded that appellant does have a mental disorder and is a danger to himself and others. She recommended "in-patient treatment program for health and alcohol intoxication needs, evaluation of organic brain syndrome." The only dispute between the examiners therefore appears to be whether alcoholism constitutes a mental disorder within the meaning of ORS 426.005(2). That is a legal issue, which we have resolved in the affirmative. Both examiners agree that appellant is a danger to himself and to others.

The state proved by clear and convincing evidence

---

[10]Although not expressly stated in the record, this is apparently a reference to appellant's sign language.

that appellant suffers from a mental disorder that causes him to be a danger to himself and others and should be committed for treatment.

Affirmed.