Argued and submitted December 5, 1994, reversed February 15, 1995

In the Matter of James Sickler,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Respondent,*

*v.*

## JAMES SICKLER,
*Appellant.*

(9403-95741; CA A83885)

889 P2d 1301

Larry J. Blake, Jr., argued the cause and filed the brief for appellant.

Robert K. Lau, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

Appellant seeks reversal of an order committing him to the custody of the Oregon State Mental Health Division. He argues that the state failed to prove by clear and convincing evidence that he is a "mentally ill person" as defined by ORS 426.005(1)(d). We reverse.

We review *de novo*. The threshold issue in this case is whether appellant suffers from a "mental disorder" within the meaning of ORS 426.005(1)(d). ORS 426.005 *et seq* provide for the commitment of "mentally ill persons." ORS 426.005(1)(d) provides, in part:

" 'Mentally ill person' means a person who, because of a *mental disorder*, is one or more of the following:

"(A)   Dangerous to self or others.

"(B)   Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety." (Emphasis supplied.)

Here, both medical examiners found that appellant did not have a mental disorder. One examiner stated that his "clearest impression [of appellant] is of someone who is antisocial and has a drug and alcohol problem." The other examiner opined that appellant "didn't demonstrate problem with thought — only impulse control." However, the trial judge found:

"I view the evidence to be the conduct of an irrational person. *He may be on drugs or alcohol* but whatever brought about this condition has made him—his behavior bizarre.

"* * * * *

"His behavior, as the court views it, is not normal behavior. * * * I view this as a mental condition, that he is sick. He has to have some sort of treatment. That is the Court's view. Dangerous to himself and unable to care for self and dangerous to others." (Emphasis supplied.)

In *State v. Smith*, 71 Or App 205, 207, 692 P2d 120 (1984), we said:

"In order to establish that a person is mentally ill, the state first must establish that the person suffers from a mental disorder."

Although a trial court is not required to explain why it rejected the examiners' reports, nevertheless there must be clear and convincing evidence in the record to support the trial court's finding that the alleged mentally ill person presently suffers from a mental disorder. *State v. Evjen,* 111 Or App 368, 826 P2d 92 (1992). The state argues that that requirement is met in this case, because the evidence demonstrates that appellant is an alcoholic and that, because alcoholism is a mental disorder within the meaning of ORS 426.225(1)(d), it follows that the trial court should be affirmed. The state relies on our holding in *State v. Smith, supra.*

In *Smith,* we noted that the phrase "mental disorder" in ORS 426.005 is not defined by statute or the legislative history underlying ORS chapter 426.[1] We said:

"We hold that the legislature, in adopting ORS 426.005 *et seq,* intended to provide for the commitment of chronic alcoholics if they meet the additional requirements of ORS 426.005(2)(a) and (b), in that they are a danger to themselves or to others or are unable to provide for their own basic needs." 71 Or App at 210.

The key words in our holding are "chronic" and "alcoholism." They are words that do not have precise definitions. Not all persons who suffer from the effects of alcohol ingestion are subject to involuntary commitment.[2] "Alcoholism" has generally been defined as

---

[1] The Diagnostic and Statistical Manual of Mental Disorders (DSM-III-R) says:

"Although this manual provides a classification of mental disorders, no definition adequately specifies precise boundaries for the concept 'mental disorder.' * * *

"In DSM-III-R each of the mental disorders is conceptualized as a clinically significant behavioral or psychological syndrome or pattern.

"* * * * *

"A common misconception is that a classification of mental disorders classifies people, when actually what are being classified are disorders that people have. For this reason, the test of DSM-III-R * * * avoids the use of such expressions as * * * an 'alcoholic,' and instead uses the more accurate * * * 'a person with alcohol dependence.'" American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* xxii-xxiii (1987).

[2] We do not suggest that only "chronic alcoholism" will support a finding that an alleged mentally ill person suffers from a presently existing mental disorder. We do not exclude the possibility that "acute" alcoholism also could constitute a mental disorder if the requirements of the statute are met. Acute alcoholism has been defined as "intoxication, drunkenness; a temporary mental disturbance with muscular incoordination and paresis induced by the ingestion of alcoholic beverages in

> "[a]lcohol abuse; alcohol dependence; alcohol addiction;
> chronic heavy drinking or intoxication resulting in impair-
> ment of health, dependency as a coping mechanism and
> increased adaptation to the effects of alcohol requiring
> increasing doses to achieve and sustain a desired effect."
> *Stedman's Medical Dictionary*, 39 (unabridged 4th ed 1976).

A " 'chronic' condition is a condition that is of long duration, characterized by slowly progressing and deep-seated progressive symptoms." *See Coffey v. Northwestern Hospital Assn*, 96 Or 100, 111, 183 P 762, 189 P 407 (1919). "Chronic alcoholism" has been defined as a "pathologic condition, affecting chiefly the nervous and gastroenteric systems, caused by the habitual use of alcoholic beverages in poisonous amount." *Stedman's Medical Dictionary, supra,* at 39.

In the light of this background, we turn to the record to determine whether it supports a finding by clear and convincing evidence that appellant suffered from a condition at the time of the hearing that falls within the parameters of a mental disorder. In the past, appellant has been convicted of driving while under the influence on at least two occasions, and had taken Antabuse. Appellant's brother testified that appellant has been abusing alcohol half of his life, and that when he drinks, he becomes verbally abusive. Appellant's sister opined that appellant needs drug and alcohol treatment. On the other hand, his mother testified that she had never observed appellant using drugs or alcoholic beverages. As the trial court found, the record is replete with instances of abusive and irrational conduct by appellant around the time of the hearing. There is other evidence of substance abuse. Appellant's brother testified that appellant used cocaine three and one-half years ago, and that he had seen large amounts of cocaine in appellant's home in the past. One of the examiners wrote in his report, "There is also a history and suspicion of current cocaine use/abuse," and that appellant's behavior could be explained by cocaine intoxication.

We think that the above statement aptly describes the state of the record. A "suspicion" of a mental disorder does not suffice to meet the requisite standard for involuntary commitment that there must be clear and convincing

---

poisonous amount." *Stedman's Medical Dictionary, supra,* at 39. The state does not argue that appellant suffered from acute alcoholism at the time of the hearing.

evidence of a mental disorder at the time of the hearing. In this record, there is evidence of cocaine and alcohol abuse in the past and of bizarre behavior immediately preceding the time of the hearing. What is missing is evidence of ingestion of alcohol or cocaine around the time of hearing that would demonstrate a nexus between appellant's previous behavior patterns and his recent behavior. Although it is inferable from the evidence that appellant's behavior resulted from chronic alcoholism, it is equally inferable, as suggested by the examiner, that it resulted from other causes, such as lack of impulse control or antisocial tendencies. In our view, there is simply not enough evidence to demonstrate that appellant suffered from a mental disorder at the time of the hearing. We acknowledge the trial court's concern about appellant's behavioral deviations from societal norms and their impact on his family. Nevertheless, without a definite diagnosis of a mental disorder or evidence that makes it highly probable that he suffered from a mental disorder at the time of the hearing, the law does not permit appellant's involuntary commitment.

Reversed.