Argued and submitted November 27, 1995, affirmed July 31, 1996

In the Matter of James Jacobson,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

JAMES JACOBSON,
*Appellant.*

(9411-97882; CA A86736)

922 P2d 670

E. Ted Meece, argued the cause for appellant. With him on the briefs was Deich and Meece.

Robert K. Lau, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

**DE MUNIZ, J.**

Appellant challenges an order finding him to be a mentally ill person. ORS 426.130(1)(b). We review *de novo*, *State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976), and affirm.

Appellant is 59 years old. He has no history of prior civil commitment. In November 1995, appellant suffered a seizure at the Portland airport and was taken to the hospital. There he was placed on a two-physician "hold," in part because he "cannot walk without assistance [1] but thinks he can, [has a] high risk of hip fracture, [and] cannot cooperate [with] medical treatment."

A medical investigator evaluated appellant and concluded that he is a chronic alcoholic. The investigator found physical problems, such as uncontrollably shaking hands, liver dysfunction, thrombocytopenia,[2] Wernicke-Korsakoff syndrome,[3] and foot-drop.[4] She also explained that, despite her admonitions and medical advice, appellant attempted to show her that he could walk and quickly fell. As to appellant's mental status, she noted that he suffered from short-term memory loss, "little insight and poor judgment about his ability to care for himself." She also noted that his goal upon release was to drink. Based on her evaluation, the investigator concluded that appellant is a danger to himself and unable to provide for his basic needs.

---

[1] Appellant has difficulty walking due to a 1984 automobile accident that resulted in damage to his left hip.

[2] Thrombocytopenia is a condition in which there is an abnormally small number of platelets in the blood. *Stedman's Medical Dictionary*, 1444 (illustrated 23rd ed 1976).

[3] Wernicke-Korsakoff syndrome appears to refer to Wernicke-Korsakoff encephalopathy. *Id*. at 749. That condition refers to the coexistence of both Korsakoff's syndrome and Wernicke's syndrome. *Id*. at 459. Korsakoff's syndrome is "characterized by confusion and severe impairment of memory, especially for recent events, for which the patient compensates by confabulation[.]" *Id*. at 1385. Wernicke's syndrome is "characterized by * * * ataxia with tremors[.]" *Id*. at 1391. (Ataxia is the inability to coordinate voluntary muscles. *Webster's Third New Int'l Dictionary*, 137 (unabridged ed 1993)). Both are frequently encountered in chronic alcoholics and may also be caused by vitamin deficiency. *Stedman's Medical Dictionary* at 1385, 1391.

[4] Foot-drop is the paralysis of certain foot muscles, which results in the toes dragging on the ground while walking. *Id*. at 543.

At the commitment hearing, testimony by family members supported a history of alcohol abuse. Appellant's daughter testified that she took appellant for a three-week inpatient alcohol treatment program in September 1992. That was followed by an outpatient program. However, appellant started drinking within six or seven weeks and lied about going to treatment.

Appellant's testimony reveals alcohol abuse beginning in at least 1991. He stated that his longest period of sobriety was one and one-half years, just prior to entering inpatient care in 1992. He said that the outpatient care worked well, as he was sober for eight months overall. He agreed that drinking makes walking more difficult. He also admitted to having the seizure at the airport and that the doctor told him it was caused by alcohol. At the time of the seizure, he said he was drinking about one-half of a fifth of vodka a day. He denied that he has any medical problem due to his drinking.

The medical examiners were split on whether appellant should be committed. Both found mild memory impairment. One examiner, Carlyle, concluded that appellant should not be committed, although appellant's "drinking is clearly destructive and causing a deteriorating physical and mental condition." The other examiner, McCubbin, concluded that appellant should be committed because he is unable to provide for his basic needs and is a danger to himself. In reaching this conclusion, McCubbin stated:

> "[Appellant] probably is unable to stop drinking without treatment. * * * He probably will die from drinking if he doesn't stop. * * * It is my opinion that he suffers from a serious mental disorder, a seizure disorder and mild dementia due to alcohol dependence. I believe he is endangering his life [and] health due to his dependence. I do not believe he has the judgment and [he] is addicted to alcohol and will not cooperate with voluntary outpatient treatment."

The trial court agreed with examiner McCubbin and found that appellant is both unable to provide for his basic needs and a danger to himself. In support of that conclusion, the court stated:

"You're an alcoholic. * * * I don't think you're ready to stop, and that worries me. I think you're going to die. And I'm worried you're going to die if they don't commit you."

■    The state must prove that appellant is a "mentally ill person" under ORS 426.005(1)[5] by clear and convincing evidence. ORS 426.130(1)(b). Appellant does not dispute that chronic alcoholism is a mental disorder, *State v. Smith*, 71 Or App 205, 210, 692 P2d 120 (1984), or that he suffers from that disorder. However, he does argue that the state has failed to meet its burden both with respect to whether he is unable to provide for his basic needs and whether he is a danger to himself. We first consider whether the state has met its burden to show that appellant is unable to provide for his basic needs.

■■    The basic needs standard focuses on an individual's ability "to survive, either through his own resources or with the help of family or friends." *State v. Bunting*, 112 Or App 143, 145, 826 P2d 1060 (1992). A speculative threat to an individual's survival is insufficient to justify commitment. *Id*. Instead, clear and convincing evidence must establish that, "due to a mental disorder, there is a likelihood that the person probably would not survive in the near future[.]" *Id*. at 146.

The state argues that appellant is unable to obtain life-saving medical care. In particular, the state argues that appellant is unable to obtain treatment for his alcoholism. Appellant argues that the state has failed to show that the threat to his health is sufficiently severe or that the threat is linked to alcoholism.

In *Bunting*, we stated:

"[T]he state need not postpone action until the individual is on the brink of death. The goal of the commitment

---

[5] ORS 426.005(1) provides, in part:

"As used in ORS 426.005 to 426.390, unless the context requires otherwise:
"* * * * *

"(d) 'Mentally ill person' means a person who, because of a mental dis order, is one or more of the following:

"(A) Dangerous to self or others.

"(B) Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety."

statute is safe survival, not merely the avoidance of immediate death." *Id.* at 145.

The appellant in *Bunting* suffered from a bipolar disorder. The appellant exhibited bizarre behavior, but his behavior had not led to any serious health problems. However, his doctors believed that his medication was causing an organic problem which might be influencing his behavior and they were unable to properly evaluate him because he was not able to cooperate due to his mental disorder. Here, although appellant's behavior is less extreme than that in *Bunting*, he suffers from serious physical ailments. He has suffered at least one seizure caused by alcohol abuse that required emergency medical treatment.[6] He also suffers from liver dysfunction and his drinking increases his risk of hip fracture. Similar to *Bunting*, appellant was also unable to cooperate with his medical treatment. We conclude, therefore, that appellant's medical condition constitutes a serious threat to his health and that treatment for his alcohol abuse is necessary for his survival.

■ Appellant argues that, even if we conclude that treatment for his alcoholism is necessary for his survival, there is insufficient evidence to show that he is unable to follow through with treatment on his own or with the help of others. Appellant testified that he both needs and wants to stop drinking. He points out that he has access to outpatient treatment, has attended Alcoholics Anonymous, and has developed a "program for treatment." Also, appellant argues that the fact that he dropped out of treatment two years prior to this action and resumed drinking is insufficient to show that he is unable to obtain treatment without commitment.

■ Even if we agreed with that statement, there is additional evidence that shows that appellant cannot stop drinking without treatment. This is not a case where appellant has not stopped drinking because he does not want to. Appellant says he wants to stop. However, because of his condition, he has simply been unable to do so. Appellant's own testimony indicates that he has attempted to stop drinking on at least

---

[6] Appellant's sister testified that he called her in September 1994 to say that he had just suffered a seizure that resulted in unconsciousness and hospitalization. However, there was no evidence linking that seizure to alcohol.

three occasions, and not just once. McCubbin found that appellant is addicted to alcohol and lacks the judgment and ability to stop through voluntary treatment. Also, in concluding that appellant will not stop drinking without commitment, the trial court specifically noted appellant's failure to clearly admit that he is an alcoholic. The trial court's findings are due some deference because it had the opportunity to observe appellant's demeanor. *State v. Furnish*, 86 Or App 194, 198, 738 P2d 607 (1987). We conclude that there is sufficient evidence to show that appellant is unable to obtain treatment without commitment.[7]

■■ Appellant also challenges the trial court's finding that he is a danger to himself. Evidence of general mental and physical deterioration is insufficient to justify a finding of mental illness under the danger to self standard. *State v. LeHuquet*, 54 Or App 895, 896, 636 P2d 467 (1981). However, as we previously explained, appellant's condition goes beyond general deterioration. He risks serious medical consequences if he continues to drink.

Appellant nevertheless argues that there must be some threat of violence or immediately dangerous situation in order to find him a danger to himself. In *LeHuquet*, we found that the state had failed to show that a chronic alcoholic was a danger to himself where, other than the general deterioration that accompanies chronic alcoholism, there was no evidence that he was otherwise in ill health, undernourished or could not care for himself. 54 Or App at 896. That holding implies that the evidence we found lacking in that case could justify commitment. Also, the danger to self standard does not require a threat of immediate harm. Instead, consistent with the basic needs standard, the threat must exist in the near future. That threat exists here. We find that appellant is unable to provide for his basic needs and is a danger to himself.

Affirmed.

---

[7] Here, we note that appellant has the desire to stop drinking, but yet is unable to do so. We express no opinion about whether a "mentally ill" person would include someone who freely chooses not to obtain the treatment that is necessary for safe survival.