208 P.3d 1009 (2009)
228 Or. App. 725
In the Matter of C.S., Alleged to be a Mentally Ill Person.
State of Oregon, Respondent,
v.
C.S., Appellant.
061070461, A133952.
Court of Appeals of Oregon.
Submitted on January 15, 2009.
Decided May 27, 2009.
*1010 Lance D. Perdue, Portland, filed the brief for appellant.
Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for respondent.
Before HASELTON, Presiding Judge, and ARMSTRONG, Judge, and ROSENBLUM, Judge.
ROSENBLUM, J.
Appellant appeals a judgment committing her to the Mental Health Division on the grounds that, due to a mental disorder, she was a danger to herself, was unable to provide for her basic needs, and was not receiving care necessary for her health or safety. ORS 426.005(1)(d)(A)-(B); ORS 426.130(1)(b)(C). Appellant suffers from a bipolar disorder and a form of psychosis with paranoia. She was placed on a mental health treatment hold after an incident at her mother's home in which she scratched her niece's face while attempting to grab a telephone out of the girl's hand. The state concedes that there is insufficient evidence to support appellant's commitment on either danger to self or basic needs grounds, but asserts that appellant is a danger to others, ORS 426.005(1)(d)(A). On de novo review, we conclude that the record lacks clear and convincing evidence to support commitment on any ground. Accordingly, we reverse.
A recounting of the facts pertaining to appellant's alleged dangerousness to herself and inability to provide for her basic needs is unnecessary. The state's concession on those grounds is well taken, as the record lacks clear and convincing evidence that would support commitment on either ground.
With respect to the state's argument on appeal that appellant is a danger to others, we take the following facts from the record. Appellant's bipolar disorder and psychosis cause her to be suspicious of her family members, particularly her mother. Appellant believed that her mother was trying to have her institutionalized; she had been hospitalized in the past for her mental disorder and did not want to be hospitalized again.
Appellant would sometimes approach her mother in an aggressive way, but her mother testified that she "would never touch me physically because she knows that's one of the criteria [for commitment]" and "she knows just how far she can go with her aggressive behavior without actually crossing that line." Her mother also testified that appellant would make veiled threats to her, saying, "I will get you." Appellant's mother and brother both testified that appellant who has a master's degree in psychology believed that her mother needed to be institutionalized. Appellant told her brother that she needed his help in having their mother institutionalized, or else she would have to "take other measures."
Appellant's mother also described the incident at home in which appellant scratched her niece's face. Appellant had begun acting "in a way that was unpredictable and very manic and taking things and moving them around." When appellant's mother decided to call Portland Adventist Hospital's mental health ward in order to have her daughter admitted, to try to put a stop to that effort, appellant grabbed the telephone and, in doing so, "[appellant's] nails had not been taken care of and so they scratched my granddaughter's face, and it was bleeding."
*1011 At the conclusion of the hearing, the two court-appointed examiners advised the court that they believed there was insufficient evidence of dangerousness to others to support commitment on that ground, although both supported commitment on other grounds. The court then asked the state if it had any closing argument. The state's attorney responded, "Your Honor, I have nothing to add to [the examiners' statements]." In appellant's closing argument, her attorney argued that there was insufficient evidence to support commitment. Basing its decision on the findings and conclusions of the examiners, the court committed appellant after finding that she was "a danger to herself, was unable to provide for her basic personal needs, and was not receiving the care necessary for her health or safety."
On appeal, the state now asserts, as an alternative basis for affirmance, that appellant is a danger to others under ORS 426.005(1)(d)(A).[1] To support commitment on the dangerousness to others ground, the record must contain clear and convincing evidence that establishes a "foundation for predicting future dangerousness." State v. Jepson, 48 Or.App. 411, 416, 617 P.2d 284 (1980); see also State v. C.H., 179 Or.App. 563, 573, 41 P.3d 434 (2002) (reversing commitment based on danger to others where the risk of future dangerousness was speculative and abstract). Verbal threats, while probative, are insufficient to support commitment unless they are accompanied by overt acts to follow through with the threat or otherwise demonstrate a clear risk of future violence. State v. R. H., 212 Or.App. 479, 484-85, 157 P.3d 1286 (2007) (so stating).
On de novo review, we consider any direct evidence of violence or threats of violence, as well as the testimony of the experts who examined appellant. Both examiners and appellant's mother, who lived with appellant, felt that appellant was not a danger to others. We find appellant's mother's testimony that appellant is "very careful" and knew how far she could go without "crossing that line" to be particularly persuasive. Moreover, the record lacks sufficient evidence of violent acts or threats by appellant. The face-scratching incident is the only evidence in the record of behavior in which appellant actually touched another person, and there is no evidence that she was trying to harm her niece, who was not seriously injured. Other evidence indicates that appellant's desire was for her mother to be institutionalized, not, as the state argues, violently harmed.
Her statement to her brother about taking "other measures" (if she could not succeed at getting her mother committed), while troubling, was not accompanied by any acts or words suggesting that she was likely to follow through with the threat. See Jepson, 48 Or.App. at 416, 617 P.2d 284 (reversing where the appellant's "statements about `getting things fixed' in Washington, D.C." were "ambiguous and susceptible to many interpretations"); cf. State v. K.H., 179 Or.App. 86, 38 P.3d 963 (2002) (affirming the appellant's commitment despite lack of violent acts, where the appellant had refused treatment for schizophrenia, heard voices telling him to kick children, and was having increasing difficulty controlling violent and possibly homicidal impulses). As we stated in C.H., when a court is faced with an abstract risk of violence "it may be tempting to `err on the side of caution' * * * because `you can never be sure.' * * * That reasoning, however, effectively shifts the burden of proof from the state to [the] appellant." 179 Or. App. at 573, 41 P.3d 434.
In summary, given the totality of the evidence, on de novo review, we agree with the state's concession on appeal that there is insufficient evidence in the record to support appellant's commitment on basic needs or danger to self grounds. We further conclude that the record also fails to support her *1012 commitment on the ground that she is a danger to others.
Reversed.
NOTES
[1] Even if the prosecutor's statement below could be regarded as a concession, we would address the merits of the state's argument in support of affirmance because the record was adequately developed to consider it. Cf. State ex rel. Juv. Dept. v. Pfaff, 164 Or.App. 470, 476-79, 994 P.2d 147 (1999), rev. den., 331 Or. 193, 10 P.3d 944 (2000) (affirming under "right for the wrong reason" doctrine where the state's concession at the trial court level did not "materially affect[] the development of the record").